DEPOSIT TRUST & SAVINGS BANK, EXECUTOR, ESTATE OF ENOCH STOTT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12195.   Promulgated April 19, 1928.

*W. Yale Smiley, Esq.*, for the petitioner.
*J. Harry Byrne, Esq.*, for the respondent.

708

OPINION.

SMITH: 1. On March 1, 1913, Enoch Stott owned 318 shares of a total of 320 shares of common stock of Stott & Son, Inc. The March 1, 1913, value of each share of stock was $322.62, which was in excess of cost to Enoch Stott. Emma Stott, his wife, owned eight shares of stock of the company at the same date which cost her less than $322.62 per share. In 1918, Enoch Stott sold 82 shares of his common stock to Wells Levens at a price of $35,269.84, the book value thereof. He reacquired the same 82 shares in 1919 at a price of $38,592.16. For the purpose of determining the profit realized by Enoch Stott upon the liquidation of the corporation in 1919 and 1920, the respondent determined that those shares of stock cost Enoch Stott $9,430. This was in error. The cost to Enoch Stott of those shares was $38,592.16.

2. In October, 1919, the stockholders of Stott & Son, Inc., entered into an agreement with Albert E. Rowe to sell to him the assets of the corporation less cash on hand and accounts receivable at their inventory value, the inventory to be taken as of January 1, 1920. The board of directors of the corporation on December 31, 1919, declared a dividend to the stockholders of all the bills and accounts receivable of the company. The principal account receivable was $42,676.64 owing to the corporation by Enoch Stott for withdrawals made by him in past years. The evidence does not show whether this amount was collected from Stott and then paid back to him in 1920, but since there was no occasion for such a procedure, and since the amount theretofore withdrawn by Stott was less than his proportionate part of the accounts receivable on December 31, 1919, it is assumed that the withdrawals by Stott were not repaid by him to the corporation in 1920 but that he was allowed to retain the same as a part of his dividend. The balance of the accounts receivable was collected by Sophia Gerlicher and distributed to the stockholders, principally in 1920, although there was one payment that was made either from the accounts receivable or from amounts received from Rowe in January, 1921, the amount of the last payment not being shown by the evidence. The evidence does not show any assignment or transfer of the accounts receivable by the corporation to Sophia Gerlicher in 1919 or whether she collected the accounts receivable as an officer of the corporation or as trustee for the stockholders. The respondent determined that the amount received by Enoch Stott and Emma Stott in 1920 was $196,003.13 and at the

hearing counsel for the petitioner admitted that these stockholders received this amount in 1919 and in 1920. No question was raised that the total amount was received in 1920 with the exception of their pro rata shares of the accounts receivable included in the dividend declared on December 31, 1919. The petitioner claims that the dividend declared on December 31, 1919, was a dividend in ordinary course and that Enoch Stott and Emma Stott received income in 1919 to the extent of their pro rata shares of $61,939.83, which dividend is exempt from normal tax since it was paid out of earnings and profits acquired subsequent to February 28, 1913.

Considering first the question as to whether the stockholders received their income from the dividend declared December 31, 1919, in the year 1919, or in 1920, we have stated above that the evidence indicates that Stott was allowed to retain as his own $42,676.64 representing withdrawals made during 1919 or prior years. The declaration of the dividend served to vest in Stott this $42,676.64 in 1919. We think he derived no income from this portion of the dividend in 1920. The balance of the accounts receivable had to be collected by Sophia Gerlicher. They were paid over to the stockholders by her in 1920. We have held in *Robert W. Bingham*, 8 B. T. A. 603; *H. L. Campbell*, 8 B. T. A. 1076; and *Adnah McMurtrie*, 8 B. T. A. 1301; that dividends declared in one year but received by stockholders during the succeeding year constituted taxable income of the stockholders in the year in which the dividend was actually received where the stockholder made his return on a receipts and disbursements basis, and that this was true even under section 213 of the Revenue Act of 1921, which provides in part:

* * * The amount of all such items (except as provided in subdivision (e) of section 201) shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period; * * *

We are not informed in the proceeding at bar as to the basis upon which Stott kept his books of account and made his income-tax returns. The respondent has determined that this dividend was income of the petitioner in the year 1920, the year of receipt by the stockholders, and in the absence of evidence showing error upon this point it must be held that such part of the dividend declared on December 31, 1919, as was paid over to the stockholders by Sophia Gerlicher in 1920, was income of the stockholders in 1920.

The status of the dividend declared by Enoch Stott & Son, Inc., on December 31, 1919, is the same as that of the dividend referred to in the case of *E. G. Perry*, 9 B. T. A. 796. In that case we said:

At the time the dividends were declared the corporation was not in dissolution and there was no retirement of the capital stock in whole or in part,

nor was there any impairment of the capital of the corporation. The dividends were declared wholly from surplus and earnings. Even if it be conceded, as the respondent apparently contends, that the declaration of the dividend was in anticipation of the dissolution of the corporation and a step taken preliminary thereto, it is our opinion that the dividend would not fall within section 201 (c) as made " in liquidation of a corporation."

We are of the opinion that this dividend declared on December 31, 1919, was not a liquidating dividend and that the stockholders receiving it are not liable to normal tax upon it.

3. The corporation was apparently in liquidation from some time in January, 1920. In that month it sold all of its assets to Albert E. Rowe, and during the year 1920 received payment therefor. The proceeds of this sale were distributed to the stockholders pro rata. In our opinion these distributions made in 1920, aside from the distributions based upon the dividend declared December 31, 1919, were liquidating dividends within the meaning of section 201 (c) of the Revenue Act of 1918, which provides in part:

* * * Amounts distributed in the liquidation of a corporation shall be treated as payment in exchange for stock or shares, and any gain or profit realized thereby shall be taxed to the distributee as other gains or profits.

The petitioner contends that any profit realized from the liquidation of the corporation is subject only to surtax and relies upon the decision of the Circuit Court of Appeals, Eighth Circuit, in *Hellmich* v. *Hellman*, 18 Fed. (2d) 239. This case was, however, reversed by the Supreme Court of the United States in a decision handed down on February 20, 1928, 276 U. S. 233. In accordance therewith it must be held that any profit realized by Enoch Stott and Emma Stott from the liquidation of the corporation is subject to both normal and surtax.

4. Enoch Stott sold his residence in 1920 for $7,000, the cost or March 1, 1913, value of which was $6,900. In his return for 1920 he computed a profit of $100 upon the sale. The respondent has increased the profit to $250 upon the ground that the depreciation sustained on the residence between March 1, 1913, and the date of sale amounted to $150. The petitioner has submitted no evidence tending to disprove the reasonableness of this amount for depreciation, provided depreciation is to be taken into account in determining the gain upon the sale. The petitioner insists, however, that, since in his income-tax returns Enoch Stott was never privileged by the statutes in force from 1913 to the date of sale of his residence to deduct depreciation on the residence, the same should not be taken into account in determining the profit. In support of this contention the petitioner cites *United States* v. *Ludey*, 274 U. S. 295; Am. Fed. Tax Rep. 6754. The question before the Supreme Court in that case was whether a taxpayer selling oil-mining properties in 1917, which

he had purchased prior to March 1, 1913, was required in computing the gain to deduct from the original cost the aggregate of depreciation and depletion items, deduction of which from annual income-tax returns was authorized. The court held that he was required to do so but in the course of its opinion stated:

* * * On the other hand, we cannot accept the government's contention that the full amount of depreciation and depletion sustained, whether allowable by law as a deduction from gross income in past years or not, must be deducted from cost in ascertaining gain or loss. Congress doubtless intended that the deduction to be made from the original cost should be the aggregate amount which the taxpayer was entitled to deduct in the several years.

Although the case before the Supreme Court did not involve the question of profit realized on the sale of property, except where depreciation was allowable as a deduction from gross income, we are of the opinion that the principle enunciated has equal application here and that in determining the gain or loss on the sale of residence property there is no requirement that the excess of the selling price over the cost or March 1, 1913, value, whichever is higher, be increased by depreciation sustained, which depreciation was not deductible from gross income. In section 202 of the Revenue Act of 1918, Congress has specifically provided the basis for determining gain or loss and has not specifically provided for depreciation. The scheme of the statute appears to be that depreciation shall not be taken account of in determining the gain except where the statute has provided for the deduction of depreciation in returns of net income. We can not believe that it was the intention of Congress that individuals, for instance, should take into account depreciation in the determination of gain or loss on the sale of numerous articles of property, depreciation upon which is not a legal deduction from gross income. For instance, if a taxpayer acquired an automobile for pleasure in 1918 at a cost of $2,000, and in 1919 sold the same automobile at a price of $2,000, it is inconceivable that the individual should be required to return as income an assumed profit upon the sale of the automobile representing an amount for depreciation of the automobile for the year during which he had used it for purposes of pleasure. We think that the same principle applies in the case at bar. The only taxable profit realized by Enoch Stott on the sale of his residence in 1920 was $100, the difference between the selling price and the March 1, 1913, value, which was the same as or in excess of cost.

5. Enoch Stott and Emma Stott, his wife, filed a joint return of income for 1920. The petitioner alleges error in that the Commissioner has refused to compute the deficiency for 1920 upon the basis of separate returns of income for husband and wife.

In *Belle R. Weaver et al.*, 4 B. T. A. 15; *Mrs. D. Sydney Smith*, 4 B. T. A. 385; *Mrs. Fred W. Gooding*, 4 B. T. A. 388; and *Mrs. E. G. Gooding*, 4 B. T. A. 389, we held that where husband and wife have filed a joint return of income, such return is a proper return under the statute, and that the date of filing is the beginning of the period within which an assessment may lawfully be made. We have held in *R. Downes, Jr.*, 5 B. T. A. 1029; *Joe R. Miller*, 6 B. T. A. 94; *Wm. A. Buttolph*, 7 B. T. A. 310; *J. F. Fairleigh*, 7 B T. A. 361; *J. W. Macon*, 7 B. T. A. 450; *Web Rogers*, 7 B. T. A. 450; and *G. B. Foster*, 7 B. T. A. 559, that under the provisions of the Revenue Act of 1921 a joint return filed by husband and wife is the return required by statute and that husband and wife may not elect after the passage of the date for the filing of a return to file separate returns and have their tax liability computed upon the basis of such separate returns. The same question was in issue before the United States District Court, Northern District of Georgia, in *Grant* v. *Rose*, 24 Fed. (2d) 115. In the course of its opinion the court stated:

4. The joint return of Mr. and Mrs. Grant was made under section 223 of the Act of 1921 (Comp. St. § 6336⅙ KK), providing: "If a husband and wife living together have an aggregate net income for the taxable year of two thousand dollars or over * * * (1) each shall make such a return, or (2) the income of each shall be included in a single joint return, in which case the tax shall be computed on the aggregate income." Husband and wife living together frequently do not keep their affairs separate, and probably for this reason they are allowed to make returns as quasi partners. This may result on the one hand in disadvantage to them in increasing the rates of normal tax and surtaxes, or advantage in absorbing in the joint income losses which would exceed the separate income of the loser. There is nothing in the law to prohibit the choice of joint or separate returns according to the result on the taxes to be paid, although husband and wife actually have kept their affairs entirely separate. On the other hand, there is nothing in the act to extend the right of choice beyond the time for making the returns. It is not unreasonable to claim a right to substitute one form of return for the other up to the last day for making returns, but, after that, and especially after the returns have been reviewed and assessments made, there are strong administrative reasons for not permitting the upsetting of the whole basis of calculation. The statutes make no provision for amendment of returns, but, in order to correct mistakes and prevent inequities and injustices, they ought manifestly to be, and are, freely allowed. Prior to 1922 it was the practice under the guise of amendment to substitute a joint return of husband and wife for separate ones and vice versa, not because of any necessity or mistake, but because it turned out that something might be saved to the taxpayers by so doing. This practice was discontinued by the department, after public notice, long prior to the filing of the joint return in this case. I hold that the statutory right of choice is exhausted on expiration of the time for filing returns. There is no right, and it seems to me no propriety, in allowing any change later to the disadvantage of other classes of taxpayers. The contrary practice which was established by the department could be abolished by it. The expectation on the part of Mr. Grant that he would be allowed fire losses more than equal to his separate

income which induced him to include them in a joint return is not such a mistake of fact when disappointed as calls loudly for relief.

In the proceeding at bar it is to be noted that any additional assessment against Emma Stott is barred by the statute of limitations; therefore, if the Board determines a tax due from her the same may not lawfully be assessed and collected. At the hearing counsel for the petitioner stated for Emma Stott that if any tax liability were determined against her the same would be cheerfully paid. It does not appear, however, that the attorney for the petitioner had any authority to bind Emma Stott to pay any tax found to be due.

The only return from which the appeal was taken was a joint return of Enoch Stott and Emma Stott. We think that at this late date no valid claim can be made that the tax liability of Enoch Stott and Emma Stott should be determined upon the basis of separate returns which never have been filed. The denial of such right by the respondent is sustained.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50*

Trussel did not participate.

Arundell dissents on the second point.

Phillips, dissenting: It is my opinion that in determining gain or loss upon the sale of residence property, proper adjustment must be made for the depreciation which took place while the property was so used.

It is not questioned that depreciation takes place in all such property. When one buys depreciable property and sells it after years of use, that which is sold is not the whole thing originally acquired. *United States* v. *Ludey*, 274 U. S. 295; *Even Realty Co.*, 1 B. T. A. 355. The residence has been used up in part; a part of its original cost has been recovered by use over the years. The amount of the cost which is used up in this manner by the owner represents a personal or living expense. Each of the revenue acts has expressly stated that such expenses shall not be deducted in computing taxable income. If, however, the owner is entitled to recover the full amount of his original cost, the effect is to allow him to deduct, in the year of sale, the depreciation which has taken place over the preceding years. Although he has used up a part of his property, he is permitted to recover the cost of the property so used. To adapt a familiar apothegm, he has consumed a part of the loaf in his living, yet he is compensated for a full loaf. This, it seems to me, is not only contrary to the intendment of the revenue acts, but contrary to their express terms.

I do not regard this conclusion as contrary to the decision of the Supreme Court cited above and in the prevailing opinion; rather, I regard it as the logical application of the principle enunciated, applied in connection with the provisions of the revenue acts prohibiting the deduction of personal and living expenses. I therefore dissent from the conclusion reached in the prevailing opinion with respect to this issue. As to the remaining issues, I concur in the result.

STERNHAGEN, TRAMMELL, MORRIS, VAN FOSSAN, and MURDOCK concur in the dissent.