1334

OLD COLONY TRUST CO., EXECUTOR, ESTATE OF CLARENCE D. REED, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6601.   Promulgated July 13, 1928.

*Hervey W. King, Esq.*, for the petitioner.
*Thomas P. Dudley, Jr., Esq.*, for the respondent.

OPINION.

Love: The first question to be determined in this case is whether or not the Commissioner erred in including in the taxable gross income of Reed, who was on a cash receipts and disbursements basis, for the year 1921, the amount of $350,000 which he found to be the readily realizable market value in that year of the written contract dated March 31, 1921, evidencing the obligation of Jones to pay the balance of the purchase price of stock sold by Reed to Jones. The term "gross income" includes gains, profits and income derived from dealings in property, whether real or personal, growing out of ownership or out of an interest in such property (section 203, Revenue Act of 1921), and computed according to the basis set forth in section 202 (a) of the statute. In the case of an exchange of property, whether real, personal, or mixed, for any other property, the statute further provides that no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value. Section 202 (e), Revenue Act of 1921.

In support of its contention that no gain resulted from the exchange of stock for the buyer's written promise to pay the balance of the purchase price, the petitioner takes the position (1) that such written promise, not represented by notes or other forms of commercial paper, is not property within the meaning of the statute, and (2) that even though the written promise of the buyer of the stock be regarded as property, it had no readily realizable market value during the taxable year in question and can not, therefore, form the basis on which taxable gain is recognized. In order, therefore, to decide the general question raised by this appeal, two subordinate questions must be answered—(1) Was the written obligation of Jones to pay the balance of the purchase price property within the meaning of the statute? and, if so, (2) Did it have a readily realizable market value in 1921?

Concurrently with the signing of the contract each party performed his part according to its terms. Thereafter the only existing legal relation between the parties consisted of an unconditional duty of Jones to pay the balance of the purchase price of the stock and the

correlative right of Reed to receive such payment. From the standpoint of a creditor in this situation, he is generally described as owning a chose in action, which for the purposes now under consideration can clearly be regarded as a form of property within the meaning of the statute. Accordingly, the first question must be answered in the affirmative.

The Commissioner found that the claim of Reed against Jones for the payment of the balance of the purchase price of the stock had a readily realizable market value in 1921 of $350,000. To sustain the burden of proof which this determination cast upon the petitioner, the testimony of two witnesses was offered; first, that of Kenneth E. Downs to the effect that he was an officer of the First National Bank of Boston (an institution having more shoe and leather business than any other bank in New England), whose personal banking experience extended over a period of 19 years, both in banks and trust companies, and who was familiar through his membership in an association of credit officers of banks, with the practice of other banks and financial institutions in Boston and vicinity, with respect to loans and discounts, and that in his opinion, based upon the nonnegotiable nature and form of the agreement, no bank or financial institution in Boston or vicinity would have purchased from Reed or discounted for him in 1921, regardless of his financial standing, his claim against Jones as established by the purchase and sale agreement in question; and second, that of Edward L. Prescott, an expert in the shoe and leather industry, particularly in the financial matters connected with reorganizations, to the effect that in view of the precarious situation of the industry in 1921, nobody would have purchased the agreement or loaned anything on it other than a nominal amount.

In our opinion the evidence offered does not overcome the presumption raised by the determination of the Commissioner. What course of action banks or other financial institutions might have pursued had Reed sought to discount his claim against Jones in 1921 belongs to the realm of conjecture. No evidence whatever was offered tending to impeach the financial responsibility of Jones and this omission, coupled with the fact that the claim was secured by collateral having a value in 1921 in excess of one million dollars, seems to us to justify the conclusion that the petitioner has not established error on the part of the Commissioner in reaching his determination. Accordingly, our decision must be for the Commissioner on this issue of the appeal.

The contention of the petitioner on the second issue is that the Commissioner erred in determining that the 564 shares of stock of the Massachusetts company acquired prior to March 1, 1913, had on that

1338

date a fair market value of $100 per share, on the ground that the agreement between the Maine corporation and Reed inevitably resulted in an equalization of the values of the stock of the two companies, i. e., that the stock of the Massachusetts company automatically acquired the value of the stock of the Maine company, into which it was convertible. That this conclusion does not follow, is obvious from the fact that had Reed exercised his option to convert his shares in the Massachusetts company into shares of the Maine company, on March 1, 1913, he would have received from the Maine company shares which it held in its treasury on that date, and that the effect of the transaction would have been to increase the outstanding shares of the Maine corporation with a corresponding reduction in the book value thereof, due to the fact that the shares of the Massachusetts company acquired had a book value of $100 per share only. In the absence of any evidence as to the actual value on March 1, 1913, of the stock of the Massachusetts company, we are of the opinion that the petitioner has failed to establish that the Commissioner erred in determining the March 1, 1913, value of the stock of the Massachusetts company at $100 per share. Accordingly, the appeal on this issue must be denied.

*Judgment will be entered for the respondent.*