*1384 OPINION.
MoReis:
The first issue to be determined is whether the profit deriyed by petitioner from the sale of the capital stock of the Kakom *1385 Oil & Gas Co. constituted income to him in 1921 or should be divided between the years 1921 and 1922 as and when petitioner received his portion of the said profit. The cost of the stock to the petitioner and the amount received from the sale are agreed upon by the parties. The question is whether all the profit should be reported as income for 1921, or part in 1921 and part in 1922.
The problem presented must be determined in the light of the legal consequences which flowed from the agreement of April 9, 1921, the acts of the parties in carrying out the terms of that agreement, and the method used by petitioner in reporting income in his returns. Briefly stated, the contention of the petitioner is that, since he received only $52,975 from the sale of his stock in 1921, he should report only that amount, less the cost of such stock to him, in his 1921 return.
The terms of the agreement show a sale of stock for $550,000, but out of this sum the vendors were to pay all the obligations of the Nakom Oil & Gas Co. Until the obligations and liabilities of that company were liquidated the purchaser was entitled to and did retain $150,000 of the purchase price. It was further agreed that, in the event that the sum so retained proved insufficient to liquidate the outstanding obligations of the Nakom Company, the vendors would indemnify the vendee as to any such excess. It was also agreed by the parties that if any balance was due the vendors, it should in no event be paid prior to March 31, 1922.
In view of the conditions which were known to exist in April, 1921, the stockholders were fearful that the sum of $299,920, which was distributed during that month, might represent more than the amount of their profits. It was, therefore, agreed prior to the receipt of their portion of the distribution that, should the company’s obligations exceed the balance retained by the trustee, plus the sum retained by the purchaser, they would indemnify the trustee proportionately to the distributions received from him. Subsequent developments were favorable to the stockholders and the trustee was able to liquidate the obligations from the sum which he had retained in his hands, so that in 1922, upon payment of the balance of the purchase price by the vendee, Holmes was able to distribute an additional amount to the stockholders.
In April, 1921, it appears, therefore, that it was uncertain and highly improbable that the vendors would realize more than the amount which had been distributed during that month. Their belief in this regard was evidenced by the indemnity agreements, which provided that they would protect and hold harmless the trustee with respect to the distribution which he had made, and that they would protect and hold harmless the purchaser of the stock in the event *1386 that the outstanding obligations of the Nakom Oil & Gas Co. proved to be in excess of the amount retained by the purchaser.
It is an undisputed fact in this case that the petitioner received but $52,975 from the sale of his stock in 1921. The theory upon which respondent rests his contention is that the sale was a closed and completed transaction in 1921, and he cites in support thereof our decisions in Parish-Watson & Co., 2 B. T. A. 851; Estate of Jeremiah Roberts Downing, 12 B. T. A. 1180; and Old Colony Trust Co., Executor, 12 B. T. A. 1384. In each of these cases the sales were made under a deferred payment plan which called for the unconditional payment of stated sums on specified dates. In each of these cases the dates of the deferred payments and the amounts thereof were unconditionally provided for and the only thing that remained to be done was the payment of the remainder of the purchase price. In the Downing case the future payments were evidenced by a promissory note, but in the other two cases the contracts constituted the evidence of the promise to pay.
These cases in our opinion are distinguishable from the present case in that the property acquired was considered to have a readily realizable market value. In this case the prospects of additional profits, after the distribution in April, 1921, were contingent, and continued so until the liquidation of the Nakom Company’s obligations. In our opinion the facts herein are more analogous to the facts in Maro Brownfield, 8 B. T. A. 1164, wherein we held that the conditions which the parties had annexed to their agreement were such that the additional amount might never be paid, that the additional sum was paid in the following year, but that the petitioner being on the cash receipts and disbursement's basis should return the amount in the year in which it was received. Cf. Emily Allen Elfreth, 15 B. T. A. 147.
This brings us to the question of the basis upon which petitioner reported his income. Section 212 (b) of the Eevenue Act of 1921 provides that a taxpayer shall compute income upon the basis of the annual accounting period regularly employed in keeping his books, but that if no such method of accounting is employed, the computation shall be made so as to clearly reflect his income. The record is silent as to the method used by the petitioner in computing income for 1921, but it clearly appears from his return for 1920 that he computed income for that year on the cash receipts and disbursements basis, and his testimony shows that he relied to a great extent upon the records of others and maintained no personal books of account. In a similar situation we stated, in John A. Brander, 3 B. T. A. 231, 235, that where a petitioner was without records it may generally be concluded that the cash method is being used. And in John T. Morris, 15 B. T. A. 260, 263, we said, “ In the absence of evidence *1387 as to the basis used in accounting and in making his return, we assume that the petitioner was on the cash receipts basis.”
In view of the foregoing it is our opinion that the respondent erred in including the $26,000 received by the petitioner in 1922 as income to him in 1921. In this disposition of the question it becomes unnecessary to pass upon the contention presented by respondent that Holmes was petitioner’s agent and that receipt by Holmes constituted receipt by Kennedy.
The second question presented by the pleadings is whether the respondent erred in including in petitioner’s income for 1921 an amount distributed on 320 shares of capital stock of the Evans-Smith Drug Co. The petitioner contends that under the facts he realized no income therefrom. The respondent contends that, since the 320 shares had been transferred to petitioner at the time the dividend was declared, petitioner received “ dividends ” as defined by section 201 (a) of the Revenue Act of 1921. No question is raised as to the amount itself but only as to the propriety of including such amount in petitioner’s income.
Since the issue must be decided upon the facts set forth in our findings, a short resume thereof will be helpful in arriving at a solution. The petitioner together with certain other stockholders decided to discontinue the wholesale drug business and embark in the warehouse and storage business. Four stockholders refused to continue in the new enterprise and desired to liquidate their interests. The business, merchandise, furniture, fixtures, etc., of the drug company were sold to another drug concern, and the wholesale drug business operated by the Evans-Smith Drug Co. was discontinued.
Upon the refusal of the four stockholders to continue their investment in the new enterprise, the petitioner made arrangements with them whereby they were to receive the book value for their stock. One of the stockholders secured a substantial advancement from the company on his 50 shares of stock prior to the determination of its book value, and the stock was transferred on the stock journal to Kennedy. Subsequently, this stockholder received from the company the balance due him in liquidation of his interest. Two of the stockholders received checks from the company in full payment for their interests on the same date that their stock was transferred to Kennedy. The fourth stockholder turned in her stock and it was transferred to Kennedy on January 26, making up the 320 shares in question. Thereafter, she received payment in the full amount of the book value of her interest. All of the checks issued by the company in payment for these stockholders’ interests were charged on its books against Kennedy.
At the meetings of the stockholders and directors on the 29th of January, Kennedy held 1,200 shares of the capital stock. The di *1388 rectors, by an appropriate resolution, provided that all the surplus and undivided profits accumulated over a long period of years should be distributed in cash on or prior to March 1, 1921. But as the former stockholders had already received their pro rata share of the dividend declared on the 29th, and the payments had been charged on the books against Kennedy, his account was credited with the dividend on 320 shares and a portion of the charge was wiped out leaving a balance against him of $32,000 representing the par value of the 320 shares. This balance was subsequently wiped out and the whole transaction balanced by the reduction in capital stock which occurred in January 1923.
Respondent has determined that petitioner received ordinary dividends from the drug company during 1921 in the amount of $105,-408.89, and that these dividends are subject to the surtax. His determination is based on the fact that the dividend was an ordinary dividend and is governed by the provisions of section 201(a) of the Revenue Act of 1921, and he cites our decisions in E. G. Perry, 9 B. T. A. 796; Deposit Trust & Savings Bank, 11 B. T. A. 706, and J. S. Rippel, 12 B. T. A. 438, as supporting his determination.
An examination of the cited cases must lead one to the conclusion that the facts are distinguishable. The Perry case, supra, decided that the dividends were declared in the ordinary manner and that although the business might be liquidated the following day, nevertheless, the dividends previously declared would remain ordinary dividends and could not be considered liquidating dividends. The Deposit Trust & Savings Bank, supra, presents the same situation and the same decision was made. Our question, however, is not whether petitioner received ordinary or liquidating dividends, but whether under the facts petitioner received income.
The facts in the Julius S. Rippel case, supra, are more nearly analogous hereto than either of the other two cited cases. Rippel purchased certain shares of stock from the vendor at the cost price to the vendor, at a time when both parties thought that the regular 4 per cent dividend was about to be declared. Within a few days after the purchase Rippel received $42,000 in dividends, which he contended was taken into consideration and influenced the price that he paid for the stock, and that this sum should not therefore be considered a dividend to him. It was held that the amount received was a dividend to him and that he was liable for the surtax thereon.
While the facts in the Rippel case and this proceeding are closely analogous, it is immediately apparent that that decision can not be followed here, because petitioner herein never received any portion of the amounts distributed on the 320 shares. The testimony shows that the whole transaction was recorded in petitioner’s account primarily because he was the president and principal stockholder. The *1389 checks issued to the former stockholders bear their endorsements, showing that they received sums equivalent to their portion of the distribution, plus the par value of their stock. The fact that the transaction was. handled from a bookkeeping standpoint through petitioner’s account is immaterial, in view of the actual facts.
We believe that to hold under these circumstances that petitioner should be taxed as receiving income on these 320 shares would be equivalent to making form paramount to substance. Accordingly, it is our opinion that it was error to include any amount representing a distribution on these 320 shares as a part of petitioner’s net taxable income.
The third assignment of error relates to the negligence penalty of $15.04 which has been asserted for 1920. Petitioner admitted the deficiency of $300.79, but denies that he was negligent in reporting his income. The penalty is provided for by section 250(b) of the Revenue Act of 1918, which states that where a taxpayer understates his income due to negligence on his part, but without intent to defraud, that there shall be added a penalty of 5 per centum of the total deficiency, plus interest.
The addition of the penalty under the terms of this section is mandatory if respondent finds that a taxpayer has been guilty of negligence. The respondent has found petitioner guilty of negligence and has assessed the penalty in accordance with the law, and the only redress which petitioner has is to prove that he exercised due diligence in reporting his income. The pleadings squarely raise the question of whether petitioner was negligent in reporting income.
The facts show that petitioner’s return was prepared for him by Smith from memoranda which he left with Smith. Included therein was a statement from Houston, Fible & Co., brokers, purporting to show the income or loss which he had sustained during the year. Petitioner procured this statement from his brokers and the testimony shows that the brokers were accustomed to preparing statements for their clients for income-tax purposes. Kennedy had no reason to question or doubt the accuracy of their statement, and it is our opinion that he followed the same course as a reasonable and an ordinarily prudent man would have followed under similar circumstances. It will also be noted that the deficiency for 1920 results from the transferring of certain income from 1921 to that year, the correctness of which was a debatable question in the Bureau itself. It follows therefore that respondent erred in determining under these facts that petitioner was negligent in reporting income for 1920.
The fourth allegation of error relates to the penalty asserted for negligence in reporting income for 1921. The provisions of section 250 (b) of the Revenue Act of 1921 are substantially the same in im *1390 posing the penalty as that of the Revenue Act of 1918, and the pleadings raise the same question of negligence on the part of petitioner.
The facts show that petitioner, in addition to understating his income from trading in stocks on margin, overstated interest paid by $728.07, and admits additional income for the year of approximately $25,000. Petitioner has failed to show that negligence had no part in producing this result and since the determination of respondent is prima facie correct until rebutted by evidence, we approve respondent’s determination as to the negligence penalty for 1921.
The petitioner’s contention that the negligence penalty should attach only to such part of the deficiency as is directly attributable to negligence is fully met by the provisions of section 250(b) of the Revenue Act of 1921, wherein it is provided that if any part of the deficiency is due to negligence, there shall be added as part of the tax 5 per centum of the “ total amount of the deficiency in tax.”

Judgment will be entered vmder Bule SO.