FRED M. HARDEN AND ESPERANZA P. HARDEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98073.   Promulgated July 9, 1941.

*Eugene Meacham, Esq.*, and *Daniel J. Hanlon, Esq.*, for the petitioners.

*Arthur L. Murray, Esq.*, for the respondent.

## OPINION.

STERNHAGEN: The primary question is whether during the three-year period ending with the close of each taxable year, as provided in section 251 (a), Revenue Acts of 1934 and 1936, petitioner, a citizen of the United States doing business in the Philippine Islands, derived 50 percent or more of his gross income from the active conduct of trade or business in the Philippine Islands. Petitioner argues that his gross income from the active conduct of a wholesale tobacco business in the Philippines must be computed without reference to the Philippine tobacco taxes, since those taxes are a deduction in computing net income and are not a factor of gross income. If the peti-

tioner is correct, his taxable income includes only the income from sources within the United States and excludes the income from sources in the Philippines.

The petitioner filed no returns for the taxable years, and therefore returns were filed by the collector. In computing a taxpayer's net income, taxes are ordinarily taken as a deduction under section 23 (c) of the statute. Regulations 86 and 94, article 23 (c)–1, recognized this statutory deduction, and article 23 (c)–2 added the qualification "provided they are not added to and made a part of the expenses of the business or the cost of articles of merchandise with respect to which they are paid, in which case they can not be separately deducted." The collector's return must be regarded as the taxpayer's return and the taxpayer is bound by any statutory elections, *Sarah Briarly*, 29 B. T. A. 256; *Joe Goldberg*, 14 B. T. A. 465. If the taxpayer had filed returns and had used his taxes as business expenses or inventory costs, such returns would be binding upon him, *Lebolt & Co.* v. *United States*, 67 Ct. Cls. 422; and if the returns varied from his bookkeeping treatment of the taxes, this variation would not have defeated his right to the method which he used in his returns, *Pathe Exchange, Inc.* v. *Commissioner*, 77 Fed. (2d) 306. The taxpayer, however, failed to file returns and can not, therefore, be said to have exercised an election to treat these taxes as business expenses or inventory costs for United States income tax purposes. He did not actively take the step which, according to the Commissioner's regulations, impairs his right to the statutory deduction.

Looking at the collector's return and treating it as for all purposes the return of the taxpayer, it still does not appear that this return demonstrates the use of the Philippine taxes as inventory cost. Indeed, the collector's return is so poorly prepared that it can not be reliably used as a basis for the decision. It is said to be prepared in accordance with returns filed by the petitioner with the Philippine Government under the Philippine income tax law. The scheme of these Philippine returns is wholly unrelated to the United States tax and varies so widely from its requirements that it is difficult, if not impossible, to bring it into correlation. Upon the basis of this collector's return, the Commissioner's notice of deficiency was predicated. The facts stated in the notice of deficiency, which ordinarily would serve as the presumptively correct determination, have been put aside by the parties and instead most of the facts have been stipulated. The facts of the stipulation are not the same as the facts in the Philippine return which are imported into the notice of deficiency. This is an unsatisfactory record, and the Board must do the best it can.

The evidence does not require the treatment of Philippine tobacco taxes other than as a normal deduction. The statute provides for such deduction and the Commissioner's regulation is similar, save only where the taxpayer has for tax purposes treated the taxes as expenses of the business or cost of merchandise, "in which case they can not be separately deducted." Plainly this regulation is intended to prevent a double benefit, and prohibits a deduction only if the taxes have already been used as a factor of reducing taxable income. Unless the item has been so used, there is no reason why taxes should not be treated as the usual statutory deduction. There is evidence that in the journal taxes were accounted for in a separate column, and that this column was, like the other two columns of merchandise and expenses, treated as a factor of inventory for the petitioner's private accounting purposes. But it was not transferred to a United States income tax return. On the Philippine returns, deductions for taxes appear clearly, although the amount can not be identified or related to the items now in question. It can not be found that, as the regulations say, the petitioner has for tax purposes made the taxes a part of the cost of merchandise. They would therefore be separately deductible if a return had been filed.

It is held, therefore, that the stipulated amounts of tobacco taxes shall not be used as a factor in the computation of petitioner's gross income for the purpose of determining whether in each three-year period the ratio of gross income from the active conduct of trade or business in the Philippines is more or less than 50 percent of total gross income.

As to 1934, it appears that the petitioner had no gross income from sources within the United States, and therefore there would be no deficiency unless the ratio of gross income from active Philippine business proved to be less than 50 percent. This appears not to be so. As to 1935, the factor of ₱64,793.47, derived by the petitioner in 1933 from the sale of mining stocks, which factor is later discussed, may result in the ratio being either more or less than the statutory 50 percent. As to 1936, the ratio of gross income from the active conduct of trade or business in the Philippines is apparently greater than 50 percent.

In the present state of the record, a definitive redetermination can not be made. A recomputation should be prepared upon the basis of the foregoing decision by omitting from the computation of gross income the stipulated amounts of Philippine tobacco taxes and treating those taxes as if they were factors of deduction in arriving at net income.

In one week of 1933 the petitioner sold shares in Philippine mining corporations and realized a profit of ₱64,793.47. He argues that this

amount is properly to be regarded as an item of gross income from the active conduct of trade or business in the Philippines, the effect of which would be to improve his 1935 ratio under the 50 percent clause. The evidence, however, does not support his contention. He was not engaged in the business of buying and selling mining shares, and these shares were apparently bought as investments for the sake of the income which they yielded. It does not appear that they had any relation to the conduct of any of his several businesses. These were the only shares which he sold during the entire five years in evidence, and the sales occurred in a single week. They had no relation to the petitioner's activities in connection with the several mining leases and claims, but were isolated instances incidental to investment, cf. *Higgins* v. *Commissioner*, 312 U. S. 212; *United States* v. *Pyne*, 313 U. S. 127; *City Bank Farmers Trust Co.* v. *Helvering*, 313 U. S. 121. The ₱64,793.47 shall in the computation for the three-year period be omitted from 1933 gross income from the active conduct of trade or business in the Philippines.

While in California the petitioner received six dividend checks, amounting to $109,452.90, from corporations in the Philippine Islands, which had been mailed to him in 1935. He deposited the checks in a bank in California. Plainly they were "amounts received by such citizen * * * within the United States", and were, therefore, properly within his taxable gross income under section 251 (b). As shown by the findings, although all of the checks were mailed in 1935, two for amounts aggregating $36,529.05 were received by him in 1936. It must be held, therefore, that this amount is to be treated as taxable income of the year 1936 and the remainder as taxable income of the year 1935.

The stipulated amounts of interest are within the petitioner's income from sources within the United States for the respective years, viz., $163.28 in 1935 and $248.90 in 1936.

At the hearing the respondent withdrew his determination of fraud penalties, and the recomputation will therefore exclude such penalties. The respondent insists, however, that delinquency penalties should be applied. It is admitted that the petitioner failed to file returns, and the penalty, if any, is therefore mandatory for 1934 and 1935. Were there any showing that the failure to file a return for 1936 was due to reasonable cause, the penalty prescribed by section 291 would not apply. There is, however, no evidence that the failure was due to reasonable cause and not due to willful neglect, and the 25 percent penalty should therefore be added for that year.

*Decision will be entered under Rule 50.*