LEE H. MARSHALL HEIRS, ET AL., FIDELITY TRUST COMPANY, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102013.    Promulgated November 7, 1941.

*Charles Denby, Esq.,* for the petitioner.
*Bernard D. Daniels, Esq.,* for the respondent.

634

### OPINION.

OPPER: The present case raises a comparatively narrow phase of the aggravated question presented when a trust taxable as an association has failed to file a timely capital stock tax return in the

belief that none was required. In this case, as in *Del Mar Addition* v. *Commissioner* (C. C. A., 5th Cir.), 113 Fed. (2d) 410, and *Jordan Creek Placers*, 43 B. T. A. 131, the matter of petitioner's liability to tax as a corporation was in dispute at the time when capital stock tax returns became due. Unlike those cases, however, a capital stock tax return was filed for petitioner by the collector, after he had satisfied himself that none would be forthcoming from petitioner. Not until after the matter of petitioner's liability to tax as a corporation had been determined by the Board in *Lee H. Marshall Heirs*, 39 B. T. A. 101 (two Members dissenting), the determination had been affirmed by the Circuit Court of Appeals for the Third Circuit, 111 Fed. (2d) 935, on April 26, 1940 (one judge dissenting), and a petition for certiorari had been denied by the United States Supreme Court, 311 U. S. 658, on October 14, 1940; and in fact after the original petition herein had been filed April 6, 1940, and answered June 5, 1940, did petitioner attempt to file capital stock tax returns for the years in question. This was long after expiration of the time fixed for the filing of an original return.

The parties are now in agreement that petitioner was taxable as a corporation; that capital stock tax returns were accordingly due from it under the law; that the time for amending a valid return under the statute had expired; and that, therefore, if respondent's action in filing returns for petitioner constituted the filing of original returns, it is conclusive and petitioner's returns filed after the period of amendment are invalid and ineffectual. *William B. Scaife & Sons Co.*, 41 B. T. A. 278; affd. (C. C. A., 3d Cir.), 117 Fed. (2d) 572; certiorari granted, 314 U. S. 459; cf. *Haggar Co.* v. *Helvering*, 308 U. S. 389. The issue here is limited to petitioner's assertion that respondent failed to take the action which would render the returns filed by him effective under R. S. 3176, as reenacted and amended by section 1103, Revenue Act of 1926;[1] that, therefore, this action was a nullity, there was in fact no earlier return, cf. *Flomot Gin Co.*, 40 B. T. A. 689, and accordingly filing by petitioner, even though late, was permissible. See *Jordan Creek Placers, supra.*

The contention is that respondent failed to take the pains neces-

---

[1] Sec. 1103. Section 3176 of the Revised Statutes, as amended, is amended to read as follows :

"Sec. 3176. If any person, corporation, company, or association fails to make and file a return or list at the time prescribed by law or by regulation made under authority of law, or makes, willfully or otherwise, a false or fraudulent return or list, the collector or deputy collector shall make the return or list from his own knowledge and from such information as he can obtain through testimony or otherwise. In any such case the Commissioner of Internal Revenue may, from his own knowledge and from such information as he can obtain through testimony or otherwise, make a return or amend any return made by a collector or deputy collector. Any return or list so made and subscribed by the Commissioner, or by a collector or deputy collector and approved by the Commissioner, shall be prima facie good and sufficient for all legal purposes. * * *"

sary to determine an actual or at least a reasonable value for petitioner's capital stock and since he was bound to do this, the return resulting was arbitrary and unreasonable and may be disregarded. This position seems to us to overlook significant factors which arise from the peculiar operation of the capital stock tax provision[2] and its interplay with the excess profits tax,[3] deficiency in which concerns us here. Even assuming that the collector failed to make as complete an examination as was required of him, a conclusion the record by no means supports, and even assuming this to be a consideration from which petitioner can take an advantage, cf. *Bailey* v. *Railroad Co.*, 89 U. S. 604,[4] there yet remain these distinctions between an ordinary return and the capital stock tax return involved in this proceeding.

Speaking of the capital stock and excess profits tax provisions, the Supreme Court said in *Haggar Co.* v. *Helvering, supra:*

* * * Here the purpose of the statute is unmistakable. It is to allow the taxpayer to fix for itself the amount of the taxable base for purposes of computation of the capital stock tax, but with the proviso that the amount thus fixed for the first taxable year shall be accepted, * * * for the purpose of computing the capital stock and excess profits taxes in later years. Congress thus avoided the necessity of prescribing a formula for arriving at the actual value of capital for the purpose of computing excess profits taxes * * *. At the same time it guarded against loss of revenue to the Government through understatements of capital * * *.

[2] E. g., Revenue Act of 1935—

SEC. 105. CAPITAL STOCK TAX.

(a) For each year ending June 30, beginning with the year ending June 30, 1936, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1.40 for each $1,000 of the adjusted declared value of its capital stock.

* * * * *

(f) For the first year ending June 30 in respect of which a tax is imposed by this section upon any corporation, the adjusted declared value shall be the value, as declared by the corporation in its first return under this section (which declaration of value cannot be amended) * * *.

[See to same effect Revenue Act of 1934, sec. 701.]

[3] SEC. 106. EXCESS-PROFITS TAX.

(a) There is hereby imposed upon the net income of every corporation for each income-tax taxable year ending after the close of the first year in respect of which it is taxable under section 105, an excess-profits tax equal to the sum of the following:

6 per centum of such portion of its net income for such income-tax taxable year as is in excess of 10 per centum and not in excess of 15 per centum of the adjusted declared value;

12 per centum of such portion of its net income for such income-tax taxable year as is in excess of 15 per centum of the adjusted declared value.

(b) The adjusted declared value shall be determined as provided in section 105 as of the close of the preceding income-tax taxable year * * *.

[See to same effect Revenue Act of 1934, sec. 702.]

[4] "* * * the powers there given the assessor were conferred for the benefit of the United States. Taxpayers, if they make the required return, will have no cause to complain that the assessor did not issue a summons to them or those representing such taxpayer to appear and give evidence upon the subject, or that the assessor did not enter the place where the taxpayer resides and make the examination of his books and papers as authorized by that section of the act. Doubtless he may do so if he deems it necessary, but the tax is not rendered illegal if the assessor omits to procure the necessary information in that way. Steps of the kind may be taken by the assessor or they may be omitted * * *."

There is therefore no requirement that a capital stock tax return shall record the actual, or even a reasonably computed, value of any taxpayer's capital stock. If the taxpayer elects to do so it may impute for capital stock tax purposes a completely arbitrary and unfounded value to its capital and though this may result in the payment of a smaller tax or none at all, no one is in a position to complain. Selection of a declared value of the taxpayer's capital is consequently a pure matter of election with no reference whatever to any fact other than the taxpayer's state of mind. Under such circumstances, if a taxpayer fails to make the election required, the Commissioner may do it for him and the taxpayer will be bound. *Joe Goldberg*, 14 B. T. A. 465; *Sarah Briarly*, 29 B. T. A. 256; see *Blenheim Co., Ltd.*, 42 B. T. A. 1248. We think it can hardly lie in the mouth of the taxpayer to object to the collector's action as arbitrary when the statute permits the taxpayer himself, in taking the same action, to be as arbitrary as he chooses.

Petitioner's contention can be summarized in its own words as one "that the statute requires that the Collector shall file a return which * * * shall represent a bona fide estimate of the taxpayer's true liability." Although the deficiency here involves excess profits taxes, the return creating the controversy was a capital stock tax return. The value disclosed by such a return may have a secondary effect in that it controls the excess profits tax which will be due on a specified quantum of corporate income. But it has a primary function by which in its own right it may be the occasion for the separate though connected capital stock tax. This is demonstrated in the present case by the necessity, complied with here by petitioner, of paying a delinquent capital stock tax when it filed the returns which respondent contends were of no effect. We do not suggest that petitioner might not have been bound if the return filed by the collector had imposed a declared value which would have resulted in some capital stock tax liability. Cf. *Joe Goldberg, supra; Sarah Briarly, supra.* Nevertheless, it can not be successfully asserted that the return which the collector did file was not a bona fide estimate of the taxpayer's true liability, merely because it was as favorable to the taxpayer as possible. The taxpayer itself could, without restraint or evasion, have filed an exactly identical return showing the same liability as the one resulting from that filed by the collector, which it could not be contended did not truly represent the taxpayer's liability.

It is abundantly evident that one of the purposes of the provisions here under review was to preclude the benefit of hindsight to a taxpayer in selecting the amounts of capital stock and excess profits taxes it chooses to make itself liable for. *Haggar Co.* v.

*Helvering, supra.* Cf. *Lerner Stores Corporation* v. *Commissioner* (C. C. A., 2d Cir.), 118 Fed. (2d) 455. It has been held that there are circumstances where the sequence of events may maneuver the taxpayer into that position, notwithstanding the manifest statutory purpose. *Del Mar Addition, supra; Jordan Creek Placers, supra.* But that result was conditioned upon and in a sense due[5] to the opportunity afforded the Government's tax officers to protect the revenue by a return filed on the taxpayer's behalf, which would have the effect of preventing the delay and consequent benefit of a knowledge of after-events. While in this case the action ultimately resorted to by petitioner might have been no different in substance by reason of that after-acquired information, we can not say that would be true in every case. In order to accomplish the clear legislative purpose and to avoid inequitable discrimination between taxpayers, we think it necessary to conclude that the collector acted properly in filing the returns as he did; that they were petitioner's first returns; that the later filing by the petitioner was untimely under the statute; that it is bound by the earlier returns; and that, therefore, the deficiences were properly determined.

*Decision will be entered for the respondent.*

---

[5] "On the contrary, we think that Congress deliberately created this right to cover delinquencies arising from reasonable causes, and, having so created it, safeguarded it against abuses by authorizing the collector to make binding returns where none were filed by the taxpayer * * *." *Del Mar Addition* v. *Commissioner, supra.*