JAMES V. MILLSAP, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12357-85.          Filed November 22, 1988.

. *Andrew B. Spiegel,* for the petitioner.
*William G. Merkle,* for the respondent.

GERBER, *Judge:* * Respondent, in a notice of deficiency dated February 12, 1985, determined deficiencies in petitioner's income tax and additions to tax as follows:

---

*By order of the Chief Judge, this case was reassigned to Judge Gerber for decision and opinion.

| Taxable year | Income tax | Additions to tax | | | |
|---|---|---|---|---|---|
| | | Sec. 6651(a)(1) [1] | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6654(a) |
| 1979 | $11,759.60 | $2,349.79 | $587.98 | N/A | $366.97 |
| 1980 | 8,900.53 | 1,439.20 | 445.03 | N/A | 317.31 |
| 1981 | 22,639.10 | 5,659.78 | 1,131.96 | ** | 1,738.85 |
| 1982 | 47,150.43 | 11,787.61 | 2,357.52 | *** | 4,589.98 |
| Totals | 90,449.66 | 21,236.38 | 4,522.49 | | 7,013.11 |

N/A - Not applicable

** 50 percent interest due on $22,639.10

*** 50 percent interest due on $47,150.43

The parties have settled all issues but one. The sole issue remaining for our consideration is whether petitioner is entitled to use "married filing jointly" rates for the taxable years in question. More specifically, we must consider the interrelationship of respondent's ability to "execute a return" under section 6020(b) and petitioner's election to file a joint return after the filing of a separate return under section 6013(b). In this connection, we must also consider the effect of respondent's execution of a return under section 6020(b) upon a taxpayer's right to deficiency procedures with respect to income tax issues.

### FINDINGS OF FACT

This case was submitted fully stipulated[2] pursuant to Rule 122. The stipulation of facts and attached exhibits are incorporated by this reference.

Petitioner resided in Scottsdale, Arizona, at the time his petition herein was filed. For the taxable years 1979, 1980, 1981, and 1982, petitioner failed to file timely Federal income tax returns. During each taxable year in issue, petitioner was married to Carol Millsap, who did not file separate returns and with whom petitioner could have filed a joint Federal income tax return.

Respondent's revenue agent conducted an examination of

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Consideration of this case was delayed by petitioner's bankruptcy proceeding which began subsequent to his petition in this Court. Under 11 U.S.C sec. 362(a)(8) (1982), an automatic stay of this Court's case went into effect. The stay was modified and lifted to permit this Court "to proceed to conclusion, including the filing of an opinion and the entering of a final decision" by an Aug. 1, 1988, order of the U.S. Bankruptcy Court for the District of Arizona, Docket No. B-87-6539-PHX-GBN.

petitioner's income tax liability and his failure to file returns for the years in issue. Respondent's agent's report of examination (Form 4549-A) was dated April 16, 1984. On April 24, 1984, respondent's agent caused the filing of the first page of a U.S. Individual Income Tax Return (Form 1040) for each of the taxable years 1979 through 1982 at the Internal Revenue Service Center, Memphis, Tennessee. Each of the single page Forms 1040 contained petitioner's name, address, social security number, and the "Filing Status" was designated as "Single." The words "SUBSTITUTE FOR RETURN PREPARED IN INDPL"[3] were handwritten on the top of each of the four single-page documents. Although these single-page-form documents were not subscribed and did not contain income or deduction information, respondent's agent attached his report (Form 4549-A) to the document. Respondent's agent's report contained explanations of items of income, allowance of a personal exemption, and a standard deduction for each taxable year. The agent's report contained the statement: "Filing status for all years is married filing separate. Section 1.6013-1, of the Income Tax Regulations states that in order for a husband and wife to avail themselves of joint return rates, a joint return must be elected by filing a joint return with both spouses signing such return." The agent's report form was subscribed but the signer's signature is unclear.[4]

On February 12, 1985, respondent mailed a notice of deficiency to petitioner. The deficiencies were determined using the tax rates for married taxpayers filing separately. Petitioner, on May 13, 1985, caused a petition to be filed with this Court. During January 1986, petitioner and his wife filed Federal income tax returns (Forms 1040), for the years in question, electing joint filing status on each return. Petitioner does not now dispute the amount of income determined by respondent. Petitioner and respondent disagreed about deduction items. The parties have settled all questions concerning deductions and other items other than

---

[3]We assume that "INDPL" is an abbreviation for the city of Indianapolis.

[4]The parties, in their stipulation of facts, did not address whether respondent's agent's report was properly subscribed. Due to the poor reproduction quality, the signature of the agent who prepared the report is not readily cognizable.

the question of whether petitioner is entitled to utilize joint return rates.[5]

OPINION

We focus here upon whether the "substitute" returns "filed" by respondent, under circumstances where petitioner and his wife had not timely filed returns, constitute a "separate return[s]" for purposes of section 6013(b).

Section 6013(a) enables "a husband and wife [to] make a single return jointly of income taxes * * * even though one of the spouses has neither gross income nor deductions." In the circumstances of this case, the computation of the tax based upon the joint tax rates, rather than separate rates, would result in a reduced tax liability for petitioner. Section 6013(b)(1) permits the election of a joint return, after a separate return has been filed, under specified circumstances. Section 6013(b)(2)(C) would preclude the filing of a joint return after a separate return had been filed if respondent had mailed a notice of deficiency to either spouse and a petition, concerning said notice, is filed with this Court. *Jacobson v. Commissioner,* 73 T.C. 610, 614 (1979).

In a recent opinion we addressed a situation, similar to the one in the present case, where respondent attempted to "file" a substitute return under section 6020(b) (before the taxpayer attempted to untimely file), thus precluding the taxpayer from using joint rates. In that case, we held that the "returns" filed by respondent were "dummy" returns and not "substitute" returns within the meaning of section 6020(b), and thus did not preclude that taxpayer from utilizing joint return rates with respect to the tax liability under consideration. *Phillips v. Commissioner,* 86 T.C. 433, 437-438 (1986), affd. in part, revd. in part 851 F.2d 1492 (D.C. Cir. 1988) (*Phillips*).[6] Although we referenced respondent's section 6020(b) authority to make returns where none

---

[5]Although petitioner's wife is not named as a party to this proceeding, that would not preclude petitioner from seeking to use joint rates.

[6]In *Phillips v. Commissioner,* 86 T.C. 433 (1986), affd. in part, revd. in part 851 F.2d 1492 (D.C. Cir. 1988), we overruled *Durovic v. Commissioner,* 54 T.C. 1364 (1970), affd. on this issue 487 F.2d 36 (7th Cir. 1973), to the extent it prohibited the filing of a joint return after the issuance of notice of deficiency, even though no prior return had been filed. Also see *Britt v. Commissioner,* T.C. Memo. 1988-419.

is filed by a taxpayer, our *Phillips* opinion did not reach the question of whether a "section 6020(b) return" is the type of return contemplated in section 6013(b). Although we did not directly address that issue in *Phillips,* our prior opinions have held that the filing of substitute returns by respondent reporting or reflecting single or married but filing separately rates constituted elections which precluded taxpayers from electing joint rates in those cases. A discussion of those cases appears on pages 932 through 934, *infra.* A concurring opinion in *Phillips,* however, reasoned that section 6013(b) specifically references returns "filed by an 'individual' " and a return prepared and filed by respondent under section 6020(b) is not "filed by an individual." *Phillips v. Commissioner* at 442-443.

The returns utilized by respondent in this case are not "dummy" returns as found in *Phillips,* but constitute "substitute" returns within the meaning of section 6020(b). Here, unlike *Phillips,* respondent attached sufficient information to the Forms 1040 to compute the tax liability. Furthermore, the attached report was subscribed. The Forms 1040 in conjunction with the revenue agent's report[7] proposing items of income, deductions, filing status, etc., provide sufficient information from which the tax may be computed. See *Phillips v. Commissioner, supra.* Also see *Conovitz v. Commissioner,* T.C. Memo. 1980-22, where an incomplete Form 1040, in conjunction with a Form 1902E (explanation of adjustments), were found to constitute a "substitute return" for purposes of section 6020.

In the present case, we are squarely confronted with the issue of whether a section 6020(b) "substitute" return is a "return" within the context and meaning of section 6013(b). More specifically, we must consider whether the language of section 6020(b) would permit the respondent to preempt deficiency procedures for issues concerning a taxpayer's filing status.

---

[7]Although the signature on the revenue agent's report is not clear, the parties have not addressed the question of whether the report is properly subscribed or whether the signature is authentic and authorized. Instead, *petitioner argues that the revenue agent's report is merely a necessary procedural step in the administrative process and should not be considered a substitute for the notice of deficiency because it has been attached to a single page Form 1040.*

Section 6020(b) authorizes the Commissioner of Internal Revenue (Commissioner) to prepare a return on behalf of a taxpayer who fails to file a return.[8] The predecessors of section 6020(b) date back to section 14 of the Act of June 30, 1864, ch. 173, 13 Stat. 226. Revised Statute 3176 provided that the assistant assessor was, under specified circumstances where a taxpayer failed to do so, entitled to prepare a "list or return" for purposes of assessment. The obvious object of such authority was to provide the essential "list or return"[9] upon which to base an assessment.[10] Without an assessment, the Government is generally unable to collect the tax and/or establish liens on property. See sec. 6301 et seq. It was not until 1924,[11] however, that deficiency procedures became available to taxpayers and were established as a prerequisite to the Government's ability to assess and collect certain types of tax. Prior to 1924, all types of tax were assessable and collectable without deficiency procedures.[12]

In their current form, the basic deficiency procedures are contained in sections 6211 through 6215. Respondent is not entitled, with few exceptions,[13] to assess income tax until

---

[8]Sec. 6020(b) provides:

SEC. 6020(b). EXECUTION OF RETURN BY SECRETARY.—
(1) AUTHORITY OF SECRETARY TO EXECUTE RETURN.—If any person fails to make any return * * * required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.
(2) STATUS OF RETURNS.—Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

[9]The revised statute section required the assistant assessor to gather information, by summons and otherwise, to be able to complete a "list or return." Implicit in this authority was a requirement that the Government be knowledgeable before preparing a return on behalf of a taxpayer. Historically, our country's revenue prior to the time of these revised statutes was sourced in property and excise taxes, and income taxes were added along with these Revised Statutes of 1864 and reinstituted by 1913 and 1916 Acts.

[10]This concept is deeply rooted in our history. In part, our country was founded as the result of tax revolt wherein citizens protested being taxed without their consent. Our tax system is rooted in the concept of voluntary compliance which does not permit the Government to arbitrarily assess tax without a proper list or report.

[11]The 1924 Act mandated deficiency procedures and the establishment of this Court's predecessor, the Board of Tax Appeals, to provide a legal forum prior to payment of the tax. Revenue Act of 1924, 43 Stat. 253, 296-298, 336-338.

[12]That is not to say that taxpayers were not notified of procedures and assessments prior to an assessment taking effect. It is to say that a taxpayer was not entitled to a day in court prior to payment of the entire tax (income, estate, and gift tax generally) and assessed interest before they were entitled to their day in court.

[13]See, for example, secs. 6851 and 6861 for termination and jeopardy assessments which may precede deficiency procedures.

after the proper mailing of a notice of deficiency and, if petitioned, until the decision of this Court becomes final. Sec. 6213(a). Accordingly, the historical and traditional purpose of a return prepared and filed by the Commissioner would be suspended or would not take effect until the deficiency procedures are first completed. If the return respondent prepares under section 6020(b) authority is literally treated as "prima facie good and sufficient for all legal purposes," respondent could ignore the deficiency procedures. This is because the return is a consent to assessment of tax in our tax system. See sec. 6201(a)(1) and sec. 1.6201-1(a)(1), Income Tax Regs. Congress has recognized that literal application of section 6020(b) may create anomalous results and has provided some explicit safeguards: The "execution of a return by the [respondent] pursuant to [section 6020(b)] shall not start the running of the period of limitations on assessment and collection." Sec. 6501(b)(3). Accordingly, we must consider whether section 6020(b) should be literally applied, in a deficiency procedure setting, to preclude[14] petitioner's election to file a joint return pursuant to section 6013.

Our first consideration of this statutory interrelationship was in *Goldberg v. Commissioner*, 14 B.T.A. 465, 467 (1928) (Court-reviewed). In that case, the taxpayers had failed to file their 1923 and 1924 income tax returns and the Commissioner, pursuant to the authority in Revised Statute 3176, "filed" returns for the taxpayers showing their filing status as joint.[15] The taxpayers sought to have their income reported or returned separately. As of that time, several cases had been decided unfavorably to taxpayers who had themselves filed returns electing either joint or separate filing status and were not entitled to change their election. [16] In an analogous manner, we decided that election by the Commissioner in a return "filed" under Revised Statute

---

[14]Under the circumstances of this case, sec. 6013(b) would preclude petitioner from now electing a joint return if respondent's substitute return is to be considered a "return" for purposes of sec. 6013.

[15]The taxpayers in *Goldberg v. Commissioner*, 14 B.T.A. 465, 467 (1928), resided in Texas, a community property State.

[16]*Macon v. Commissioner*, 7 B.T.A. 450 (1927); *Foster v. Commissioner*, 7 B.T.A. 559 (1927); *Torland v. Commissioner*, 11 B.T.A. 35 (1928); *Deposit Trust & Savings Bank, Executor v. Commissioner*, 11 B.T.A. 706 (1928); *Downes v. Commissioner*, 5 B.T.A. 1029 (1927); *Miller v. Commissioner*, 6 B.T.A. 94 (1927).

3167 would likewise preclude election of a different filing status by taxpayers. This was a case of first impression. Moreover, this case of first impression was being considered in an historical environment which accepted the Commissioner's statutory right to make a "return or list" for a taxpayer who failed to file. This "return" which the Commissioner had made and/or filed up until 1924 was sufficient to permit the assessment and collection of the tax by the Commissioner.

A dissenting opinion expressed disagreement with the holding, as follows:

> I am of the opinion that section 3176 [of the Revised Statutes] has no application whatever to the matter of an election as to how a conjugal couple shall make their income-tax return. It only provides that, in the event no return be filed by the taxpayer, the Commissioner may, with such information as he may be able to obtain, make and subscribe a return for and on account of the taxpayer, and that such return so made shall be prima facie good for all legal purposes.
>
> *In the absence of a protest sustained, that return in law is sufficient to base an assessment upon, and enforce collection. But in the event of a protest on the part of the taxpayer, I know of no decision of any court or of this Board, prior to the one now being considered, that can be construed to hold that the return made by the Commissioner is binding on the taxpayer on any phase of such return.*
>
> [*Goldberg v. Commissioner*, 14 B.T.A. at 468. Emphasis supplied.]

The dissent continued with a discussion of the basis for holding taxpayers to their initial election.[17]

About 9 years later, in *Taylor v. Commissioner*, 36 B.T.A. 427, 429 (1937), (*Taylor*) (involving the Commissioner's motion to dismiss for lack of jurisdiction) the Board of Tax Appeals did not permit the Commissioner to preclude or preempt deficiency procedures based upon a substitute return. In that case, the taxpayer failed to file a 1917 income tax return, and during 1935, the Commissioner "prepared and filed such return for [the taxpayer], pursuant to section 3176 of the Revised Statutes as amended." The Commissioner "reported" over $10,000 in tax and over $5,000 in an addition to tax for 1917. Three days later, the

---

[17]The dissenter opined that "the right of election is not waived by laches." Further, "The doctrine of election of remedies is generally regarded as being an application of the law of estoppel. (9 R.C.L. 957)." 14 B.T.A. at 469. These principles are the bases for the final conclusion that the Commissioner cannot make a binding election for the taxpayer in a situation where the taxpayer is contesting the Commissioner's determination.

Commissioner mailed a notice of deficiency to the taxpayer who petitioned the predecessor of this Court admitting that he owed $250.90 in tax for his 1917 taxable year. The Commissioner's motion to dismiss for lack of jurisdiction was based on his contention that there was no deficiency determined because the amount shown on the notice of deficiency did not exceed the amount shown on the substitute return (which had been filed by the Commissioner). In denying the Commissioner's motion to dismiss for lack of jurisdiction, the Board of Tax Appeals stated:

> In the ordinary case where a return is filed by the taxpayer, the amount of tax shown thereon is admitted to be due, and in such case a deficiency is the amount of tax determined by respondent to be due in excess of that shown on the taxpayer's return. But where a taxpayer shows an amount of tax on his return but does not admit that such amount is due and collectible, the amount admitted to be due and not the amount shown on the return is the starting point in computing a deficiency. [*Taylor v. Commissioner* at 429.]

Our holding in *Taylor* that we possessed jurisdiction to the extent that a taxpayer disagreed with the return as filed by respondent in a deficiency setting, is, we believe, the correct and intended congressional interpretation. To hold otherwise would both ignore and obviate the deficiency procedures upon which our jurisdiction is based. It would be no less anomalous to permit the Commissioner to "elect" filing status or resolve other differences which the taxpayer disputes under section 6020(b) in a situation where a taxpayer properly contests respondent's determination and opts to petition this Court. Although we have not varied from the specific holding of *Taylor* as it relates to the income and deduction items, we have failed to afford taxpayers the same rights as they relate to filing status. This issue has not been formally[18] addressed by this Court for many years. We have, with limited exception,[19] merely accepted the rationale of earlier holdings without recognizing the effect that *Taylor* should have had upon the filing status issue.

---

[18]No reported or reviewed opinions considering the rationale underlying the filing status aspect of this issue have been issued since *Taylor v. Commissioner*, 36 B.T.A. 427, 429 (1937).

[19]See, for example, *Conovitz v. Commissioner*, T.C. Memo. 1980-22; *Smalldridge v. Commissioner*, T.C. Memo. 1984-434, affd. 804 F.2d 125 (10th Cir. 1986).

Relying on Memorandum Opinions of this Court,[20] the Circuit Court of Appeals for the 10th Circuit held that the Commissioner can elect the filing status, by means of a return filed under authority of section 6020(b), of a taxpayer who has failed to file. *Smalldridge v. Commissioner*, 804 F.2d 125, 127-128 (10th Cir. 1986), affg. T.C. Memo. 1984-434. The 10th Circuit Court of Appeals places reliance upon the rationale contained in the underlying Memorandum Opinion of this Court, as follows:

> The Tax Court clearly recognized the present problem when it commented in its decision as follows:
>
> Where a tax return is not timely filed by a taxpayer, and the Commissioner is required to make the joint or separate return election for the taxpayer in a notice of deficiency, that election may not thereafter be altered *if* the taxpayer files a petition with respect to the notice of deficiency with this Court. As stated previously by this Court—
>
> the administrative considerations which accompany a system such as ours, where taxation is based upon voluntary disclosure, demand that where, "as a result of a failure to file a return, the Commissioner has been required to make an election for the taxpayers * * * that election may not thereafter be altered." (emphasis added.)
>
> [*Smalldridge v. Commissioner, supra* at 128. 48 T.C.M. 882, 883. Fn. ref. omitted.]

The rationale[21] relied upon by the 10th Circuit and quoted in the Memorandum Opinion, was from our opinion in *Durovic v. Commissioner*, 54 T.C. 1364, 1402 (1970), affd. on this issue, revd. in part 487 F.2d 36, 41-42 (7th Cir. 1973), cert. denied 417 U.S. 919 (1974), (*Durovic*). We overruled our holding in *Durovic*, as pertinent to this discussion, in *Phillips v. Commissioner*, 86 T.C. 433, 441 (1986), affd. in part, revd. in part 851 F.2d 1492 (D.C. Cir. 1988). Our *Durovic* holding precluded a taxpayer, who had not yet filed a return, from electing a filing status other than the one determined by respondent in the notice of deficiency. This position was based upon a reading, albeit incorrect, of section 6013(b)(2). The *Durovic* rationale is founded upon an equitable concept and not upon a statutory requirement. Essentially, the *Durovic* rationale penalizes a taxpayer for failing to file and permits the Commis-

---

[20]*Smalldridge v. Commissioner, supra; Conovitz v. Commissioner, supra.*

[21]Our holding in *Phillips v. Commissioner, supra,* and in this case, as regards the rationale quoted above, is limited to the election of filing status.

sioner, whether informed or not, to "elect" and finalize the taxpayer's filing status. One might argue that this approach is appropriate in situations where a taxpayer willfully fails to fulfill his filing responsibility. The *Durovic* rationale would be unjust and unfair for taxpayers whose failure was unintentional and/or justifiable. We overruled *Durovic* based upon respondent's published position, congressional history underlying section 6013, and a plain reading of the statute. *Phillips v. Commissioner, supra* at 441. See also the discussion by the Claims Court in *Tucker v. United States,* 8 Cl. Ct. 575, 579-581 (1985). When considered in connection with deficiency procedures, there is no difference in theory or effect of treating respondent's attempted election on behalf of a taxpayer any differently, whether set forth in a notice of deficiency or a substitute for return.

The plain language of section 6013(b) references a return filed by an "individual." It is implicit in this language that taxpayers have the initial right to elect their filing status and that right concerns a part of a deficiency that is no less significant than the amount of the income and deductions determined in arriving at an income tax deficiency.[22] Clearly, respondent is entitled to execute and file substitute returns for taxpayers who fail to do so themselves, but the substitute return should in no way preclude a taxpayer's statutory right to a hearing on the deficiency and the elements that comprise it. *Taylor v. Commissioner,* 36 B.T.A. 427 (1937). The filing status election is no different from any other adjustment that goes into the determination of a deficiency under section 6211 et seq.

We consider here the confluence of three statutory provisions enacted at different times for different purposes which: (1) Are not inherently ambiguous; (2) do not literally conflict with each other; but may (3) produce anomalous or unintended results in their application. Secs. 6013, 6020, and 6213. Further, the legislative history underlying these statutory provisions does not resolve the conflict or circu-

---

[22]In fact, the filing status affects the rate of tax to be applied to a specific amount of taxable income. See secs. 1 through 3. Depending upon the filing status, the rate for that status may produce a larger or smaller deficiency within the meaning of sec. 6211(a). The rate structure directly affects the amount of deficiency in the same manner as items of income and deductions. We should not be in the position of deciding which aspect of the deficiency a taxpayer may or may not contest—a responsibility reserved for Congress.

ity. In this type of situation, we have been guided to "read the statutes to give effect to each if we can do so while preserving their sense and purpose." *Watt v. Alaska,* 451 U.S. 259, 267 (1981); *Haggar Co. v. Helvering,* 308 U.S. 389, 394 (1940); *Porter v. Commissioner,* 288 U.S. 436 (1933). Where several statutory provisions conflict in their application, we should attempt to interpret or reconcile them in a manner which will not cause an arbitrary or an unreasonable result. *Porter v. Commissioner, supra.*

To treat the issue of a taxpayer's filing status any differently than the issues involving deductions or income items would be arbitrary and without reason. A taxpayer is no less entitled to question respondent's determination of filing status than he is any other determination. We have already recognized and accepted that respondent may not obviate or circumvent the deficiency procedures and/or this Court's jurisdiction by means of section 3176 of the Revised Statutes (now section 6020) (*Taylor v. Commissioner, supra*), and we resolve this statutory conflict similarly. Our approach leaves section 6020 intact for situations where deficiency procedures are not available or have been foregone. It also advances a rational meaning for the word "individual" in section 6013(b), while providing appropriate preassessment Court review of all issues generated by respondent's determination in this and other cases.

In view of the foregoing, we hold that in situations where deficiency procedures are availed of and a taxpayer has not filed a return, the taxpayer may file a return and contest respondent's filing status determination, even though respondent has "filed" a substitute return under section 6020(b), in which filing status has been "elected" by respondent. To hold otherwise would be to cede jurisdiction as to the determination of filing status in all cases where no return has been filed to respondent for his absolute and final determination. Accordingly, we overrule the holding in *Goldberg v. Commissioner,* 14 B.T.A. 465, 467 (1928), and its progeny and decline to follow the 10th Circuit Court of Appeals' holding in *Smalldridge v. Commissioner,* 804 F.2d 125, 127-128 (10th Cir. 1986), affg. T.C. Memo. 1984-434.[23]

---

[23]In accord with our holding in *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971), we will follow *Smalldridge v. Commissioner, supra,* in all cases appealable to the 10th Circuit.

The circumstances of this case reflect that petitioner had not filed a return and respondent attempted to execute and file a return for petitioner electing individual or separate filing and tax rate status. About 9 months later, respondent mailed a notice of deficiency to petitioner and this proceeding was timely commenced. Thereafter, petitioner, for the first time, filed returns seeking joint filing and tax rate status, which he would otherwise be entitled to do, unless the "returns" filed by respondent are considered returns for purposes of section 6013. We, accordingly, hold that the substitute returns in this case, prepared by respondent under section 6020(b), do not preempt or preclude petitioner's right to contest the deficiency determined by respondent, including petitioner's filing status under section 6013. Petitioner is entitled to and did elect joint filing status and rates for the taxable years 1979 through 1982.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

WHITAKER, KÖRNER, SHIELDS, CLAPP, SWIFT, WRIGHT, PARR, and COLVIN, *JJ.*, agree with the majority opinion.

COHEN, *J.*, concurs in the result only.

NIMS, *Chief Judge*, dissents.

RUWE, *J.*, did not participate in the consideration of this case.

———————

SWIFT, *J.*, concurring: In further support of the result reached by the majority opinion, I would add that such result avoids the anomalous situation that would obtain under respondent's position. Assuming respondent's position regarding the effect of a substitute return were correct, only where a taxpayer receives a notice of deficiency and subsequently files a petition in the Tax Court would the taxpayer be precluded from electing joint return status. Section 6013(b)(2)(C), by its express terms, only applies where the taxpayer files a petition in the Tax Court.[1] As we

—————

[1]Sec. 6013(b)(2)(C) provides in relevant part as follows:

previously have explained,[2] upon receiving a notice of deficiency computed on a separate return basis, a well-advised taxpayer would not file a petition in this Court but instead would pay the resulting tax assessment and file a claim for refund on a joint return basis. By not filing a petition in this Court, the limitation of section 6013(b)(2)(C) would be avoided. Nothing in section 6013 would justify the Commissioner's disallowance of the claim for refund in that situation other than the limitation of section 6013(b)(2)(B) that the claim for refund be filed within 3 years of the due date of the original return. The result reached by the majority opinion eliminates any such disparate treatment relating to filing status that is based solely on whether a taxpayer challenges a tax deficiency by filing a petition in this Court or by paying the deficiency and filing a claim for refund. I discern no reason why the former taxpayer should be limited to separate return filing status, while the latter taxpayer is allowed the benefit of joint return filing status.

On another matter, the majority opinion (p. 935) rejects out of hand an administrative policy that this and other courts have frequently recognized and that may still be viable in other situations. I would expressly limit our rejection of that administrative policy to the particular joint return issue before us.

I also would clarify that our Memorandum Opinion in *Smalldridge v. Commissioner*, T.C. Memo. 1984-434, did not address the effect of section 6020(b) upon the joint return issue addressed therein. In affirming the result reached in our Memorandum Opinion in *Smalldridge*, the 10th Circuit on its own initiative relied on section 6020(b).

CHABOT and GERBER, *JJ.*, agree with this concurring opinion.

---

*

---

(2) LIMITATIONS FOR MAKING OF ELECTION.—The election provided for in paragraph (1) may not be made—

    \*     \*     \*     \*     \*     \*     \*

(C) after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in section 6213;

[2]See *Smalldridge v. Commissioner*, T.C. Memo. 1984-434, n. 5 (48 T.C.M. 882, 883 n. 5; 53 P-H Memo T.C. par. 84,434, at 84-1747 n. 5); *Rhoades v. Commissioner*, T.C. Memo. 1983-608, n. 2 (46 T.C.M. 1562, 1563 n. 2; 52 P-H Memo T.C. par. 83,608, at 2462-83 n. 2).

WHALEN, *J.,* dissenting: The majority overrules *Goldberg v. Commissioner,* 14 B.T.A. 465 (1928), which has been outstanding for 60 years, and now holds that a so-called "substitute return" made by the Secretary of the Treasury or his delegate pursuant to section 6020(b) and declared by Congress to be "prima facie good and sufficient for all legal purposes" is not a return for purposes of section 6013(b), with the result that the limitations on a taxpayer's election to make a joint return for the same taxable year, set forth in section 6013(b)(2), are not applicable.

Neither petitioner nor his spouse made a timely Federal income tax return for calendar years 1979, 1980, 1981, or 1982, as required by law. Secs. 6011, 6012(a)(1)(A), 6072(a), 6081(a). Accordingly, in April 1984, after conducting an audit of petitioner's income tax liability, respondent exercised his authority under section 6020(b) to make substitute returns on petitioner's behalf for those years. These substitute returns, designating petitioner's filing status as "Single," were "separate returns" in the sense that no election to make a joint return under section 6013(a) was made for petitioner and his spouse. Approximately 9½ months later, respondent issued petitioner a notice of deficiency based upon the tax liability shown on the substitute returns. After commencing this proceeding, petitioner and his spouse filed delinquent returns in January 1986, claiming joint filing status in derogation of the limitation contained in section 6013(b)(2)(C).

In analyzing petitioner's claim, it is helpful to note that the Internal Revenue Code generally provides the tax collector with three alternative responses to a taxpayer's failure to file an income tax return. First, he may seek criminal sanctions pursuant to section 7203 against any taxpayer whose failure to file is willful. E.g., *United States v. Verkuilen,* 690 F.2d 648 (7th Cir. 1982) (affirming taxpayer's conviction for failure to file individual income tax returns for 1976 and 1977 after respondent made a return on the taxpayer's behalf for 1975 under section 6020(b)).

Second, the Secretary of the Treasury may issue a statutory notice of deficiency, even though no return is made by the taxpayer, and compute the amount of the

deficiency as if a return were made showing the amount of tax to be zero. Sec. 301.6211-1(a), Proced. & Admin. Regs.; *Laing v. United States,* 423 U.S. 161, 174 (1976); *Roat v. Commissioner,* 847 F.2d 1379 (9th Cir. 1988); *Hartman v. Commissioner,* 65 T.C. 542, 545 (1975). The issuance of a notice of deficiency by itself, however, does not preclude a taxpayer from subsequently filing a delinquent return and electing to make a joint return under section 6013. *Phillips v. Commissioner,* 86 T.C. 433 (1986), affd. in part, revd. in part 851 F.2d 1492 (D.C. Cir. 1988). We held in *Phillips* that so long as a taxpayer and his spouse have not previously filed a separate return, the limitations on that taxpayer's election to make a joint return, set out in section 6013(b)(2), are not applicable. See *Tucker v. United States,* 8 Cl. Ct. 575 (1985).

Third, the Secretary may do what he did in this case and what he attempted to do in *Phillips:* make a substitute return pursuant to section 6020(b) on behalf of the taxpayer and issue a statutory notice of deficiency for the income tax shown on such substitute return. While the Secretary is given "authority" to make such return, he is clearly not required to do so. *Roat v. Commissioner, supra; Moore v. Commissioner,* 722 F.2d 193, 196 (5th Cir. 1984); *Hartman v. Commissioner, supra* at 545. In this case, unlike *Phillips,* the majority found that the Secretary made substitute returns on behalf of petitioner.[1] If the Secretary makes a return on behalf of the taxpayer, section 6020(b)(2) states

---

[1] It appears that each of the returns made by respondent consists of: (1) An unsigned single-page Form 1040 containing petitioner's name, address, social security number, and filing status, and no other information; and (2) an attached report prepared by respondent's revenue agent setting forth an explanation of income items, an allowance of a personal exemption, and a standard deduction. Only the revenue agent's report, however, was subscribed, and it appears that such signature is "not readily cognizable." Assuming that the signature in question is that of respondent's revenue agent, he would seem to have been delegated authority to execute a substitute return pursuant to sec. 6020(b). Delegation Order No. 182 (Rev. 3), 1984-1 C.B. 328.

While I accept the majority's conclusion that the subject documents constitute "substitute returns" for purposes of this dissent, I question whether the majority has fully considered the requirement of sec. 6020(b)(2) that such a return be subscribed by the Secretary or his delegate. In this case, the return itself was not subscribed, but a signature does appear on a document attached to such return. We have consistently held that an unsigned form submitted by a taxpayer is not a return, even though the taxpayer's signature appears on a document attached thereto. *Richardson v. Commissioner,* 72 T.C. 818, 822 (1979); *Vaira v. Commissioner,* 52 T.C. 986, 1005 (1969), revd. on other grounds 444 F.2d 770 (3d Cir. 1971). See also *Brafman v. United States,* 384 F.2d 863, 868 (5th Cir. 1967). I see no reason why the same should not be true here. See *Rinieri v. Scanlon,* 254 F. Supp. 469, 474 (S.D. N.Y. 1966). In that situation, our decision in *Phillips* controls.

that any such return "shall be prima facie good and sufficient for all legal purposes."

It is clear that if the petitioner had made the separate returns which respondent made on his behalf, section 6013(b)(2)(C) would foreclose him from contesting his failure to elect joint filing status in a proceeding before this Court. The limitation in section 6013(b)(2)(C) becomes operative once a separate return is filed. This limitation precludes a taxpayer from thereafter electing to make a joint return with his spouse for that year once a notice of deficiency is issued to either one of them and a petition is filed in this Court. The issue here is whether such limitation becomes operative following a substitute separate return made by respondent under section 6020(b).

Section 6020(b)(2) declares that a substitute return is presumed to be, in effect, the functional equivalent of a return filed by an individual taxpayer.[2] While a taxpayer may present facts and circumstances which raise the question whether the presumption created by section 6020(b)(2) should be overturned, the majority makes no finding that any such facts are present in this case.[3] Accordingly, I would hold that the limitation of section 6013(b)(2)(C) applies to petitioner and prohibits his election of joint return status after having been deemed by law to have filed a separate return. To hold otherwise reads section 6020(b)(2) out of the Code.

As I read its opinion, the majority believes that respondent should not be permitted, by filing a substitute separate return, to foreclose petitioner from electing to file a joint return. The majority recognizes that literal application of section 6020(b)(2) requires that result, but believes it to be an "anomalous" and "unintended" result in terms of the

---

[2] It begs the question to say, as the majority opinion does, that sec. 6020(b), a provision of general remedial application, cannot apply in the context of sec. 6013(b) because the latter provision makes reference to returns filed by an "individual."

[3] For example, the presumption in favor of a substitute return might be called into question upon a showing that the taxpayer actually filed a return of which the Commissioner has no record. Similarly, a showing of facts sufficient to avoid the addition to tax under sec. 6651(a)(1) for failure to file a timely return might also be sufficient to overcome the "prima facie" legal effect of a substitute return under sec. 6020(b)(2). It appears the majority is concerned by the application of sec. 6020(b) in situations where a taxpayer's failure to file is "unintentional and/or justifiable." No such facts were involved in Goldberg v. Commissioner, 14 B.T.A. 465 (1928), or the cases cited below which follow Goldberg. I might agree that a substitute return should not be binding in that case. However, no such facts were found by the majority in this case and that issue is simply not presented here.

deficiency procedures set out in sections 6211 through 6215, as interpreted by our opinion in *Taylor v. Commissioner,* 36 B.T.A. 427 (1937).

Unlike the majority, I do not believe it is anomalous to hold, as we did in *Goldberg v. Commissioner, supra,* that a substitute return filed on behalf of a delinquent taxpayer under section 6020(b) triggers the limitation contained in section 6013(b)(2)(C) and, at the same time, to hold, as we did in *Taylor v. Commissioner, supra,* that the taxpayer is nevertheless able to petition this Court for redetermination of other aspects of the respondent's deficiency computation arising from the substitute return. The result is identical for a taxpayer who failed to file a return and for a taxpayer who filed a separate return: both can petition this Court to redetermine other elements of a deficiency, but both are foreclosed by section 6013(b)(2)(C) from electing joint return status. In my view, the majority creates the anomaly by affording nonfiling taxpayers an opportunity to elect joint return status while the statute expressly makes such election unavailable to taxpayers who file their returns.

Unlike the majority, I do not believe that the issue in this case presents a conflict between section 6020(b) and the deficiency procedures embodied in sections 6211 through 6215. Under the *Goldberg* rule, a delinquent taxpayer for whom respondent makes a substitute return would be bound by separate filing status if selected by respondent. A delinquent taxpayer, such as petitioner, had the opportunity to elect joint filing status for himself, but failed to do so. In my view, it is not "anomalous" for the statute to provide, as I believe it does through the application of section 6020(b), that a delinquent taxpayer is bound by the selection made by respondent on a substitute return. I see nothing in the deficiency procedures to suggest that a delinquent taxpayer should not be bound thereby, just as if he had filed the substitute return himself, or just as in the case of a taxpayer who files a timely return.

Nor do I agree that Congress recognized that the literal application of section 6020(b) would bring about "anomalous results" in this case. Indeed, when Congress enacted the Revenue Act of 1924, which created the deficiency procedures, it also reenacted the predecessor of section 6020,

which provided that a return made by the Secretary on behalf of a delinquent taxpayer is "prima facie good and sufficient for all legal purposes." Sec. 1003, Act of June 2, 1924, ch. 234, 43 Stat. 339. In fact, Congress has also amended or reenacted section 6020(b) and its predecessors six times during the 60 years since our decision in *Goldberg,* and, in effect, has tacitly approved that decision.[4]

Congress also demonstrated its approval of the principle underlying the *Goldberg* decision by adding section 6501(b)(3) to the Code in 1954. Sec. 6501(b)(3), I.R.C. 1954, 68A Stat. 803. That provision expressly applies "notwithstanding the provisions of paragraph (2) of section 6020(b)," and stops the running of the period of limitations on assessment and collection in the case of substitute returns executed by the Secretary. The congressional committee reports describe the effect of section 6501(b)(3) as follows:

This subsection * * * *changes existing law* in that the execution of a return by the Internal Revenue Service will not constitute the making of a return for the purpose of starting the running of the statute of limitations on assessment. [S. Rept. 1622, 83d Cong., 2d Sess. 584 (1954); H. Rept. 1337, 83d Cong., 2d Sess. A413 (1954). Emphasis supplied.]

Such change would have been unnecessary unless Congress viewed a substitute return as the equivalent of a return filed by the taxpayer.

Shortly after Congress promulgated the deficiency procedures in 1924, our predecessor, the Board of Tax Appeals, was called upon to determine the meaning of the term "deficiency" for purposes of deciding whether the Board had jurisdiction over the matter at issue or whether, as respondent contended, there was no deficiency because he had merely assessed the amount shown on the return filed by the taxpayer. See, e.g., *Moir v. Commissioner,* 3 B.T.A. 21 (1925); *Continental Accounting & Audit Co. v. Commissioner,* 2 B.T.A. 761 (1925). We noted that, ordinarily, the term "deficiency" is the amount of tax determined to be due by respondent in excess of that shown on the taxpayer's return, but held that such term also includes so much

---

[4]See sec. 412(b)(4), Deficit Reduction Act of 1986, Pub. L. 98-369, 98 Stat. 792; sec. 1906(b)(13)(A), Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1834; sec. 103(e)(3), Revenue and Expenditures Control Act of 1968, Pub. L. 90-364, 82 Stat. 264; sec. 6020, I.R.C. 1954, 68A Stat. 740; sec. 3612, I.R.C. 1939, 53 Stat. 437; sec. 406 Act of August 30, 1935, ch. 829, 44 Stat. 112.

of the tax liability shown on the taxpayer's return which the taxpayer does not acknowledge to be due and collectible. *Moir v. Commissioner, supra; Continental Accounting & Audit Co. v. Commissioner, supra.*

We subsequently applied the same rationale to a substitute return filed by respondent. *Taylor v. Commissioner,* 36 B.T.A. 427 (1937). In *Taylor,* we correctly held that there was a "deficiency" in the amount of the tax liability shown on a substitute return, just as in the case of a return filed by the taxpayer himself, because the taxpayer had not acknowledged such tax liability to be due and owning. We rejected the Commissioner's contention that a substitute return foreclosed our deficiency jurisdiction and in legal effect was something more than a taxpayer's own return. We did not, however, suggest that a substitute return was anything *less* than the taxpayer's own return. In *Taylor,* we merely granted a substitute return made by the Secretary or his delegate under section 6020(b) the same legal status as a return made by the taxpayer, himself.

*Taylor* involved a substitute return, but did not involve an election to file a joint return under section 6013, as did *Goldberg.* Nevertheless, the two opinions are entirely consistent and give a substitute return the same status as a return filed by the taxpayer himself. We stated the following in *Goldberg:*

In *R. Downes, Jr., supra,* we denied to the petitioner, who had filed a return on a joint basis, the right to change to a separate basis. The foundation of this decision is that under section 223, Revenue Act of 1921, a husband and wife may either file separate returns or a joint return and that whichever method is pursued, the return or returns filed become the return or returns recognized and required by the statute. The decision further holds that taxpayers are not permitted or required to file more than one return for a taxable year. It followed, therefore, that since the return contemplated by the statute was filed when the joint return was filed, the Board could not recognize new returns on a separate basis as the returns required by statute.

Now, is the situation different where no return was filed by the husband or wife, but a return was filed on their behalf by the Commissioner? In other words, does the return filed by the Commissioner become *the* return of the husband and wife, and stand on the same basis as a return filed by the parties themselves? We think so. Not only does section 3176 provide that upon the failure of a taxpayer to make a return, the return may be made by the Commissioner from his own

knowledge and from such information as he can obtain, but also that any return so made "shall be prima facie good and sufficient for all legal purposes." In the opinion of the Board, this provision can only mean that Congress intended that a return so filed should answer the same purposes as if filed by the parties themselves. * * * [T]hese returns filed by the Commissioner have the same status as returns filed by the parties themselves * * *

[14 B.T.A. at 466-467. Emphasis in original.]

We stated the same rationale for our decision in *Taylor:*

In the ordinary case where a return is filed by the taxpayer, the amount of tax shown thereon is admitted to be due, and in such case a deficiency is the amount of tax determined by respondent to be due in excess of that shown on the taxpayer's return. But where a taxpayer shows an amount of tax on his return but does not admit that such amount is due and collectible, the amount admitted to be due and not the amount shown on the return is the starting point in computing a deficiency. [36 B.T.A. at 429.]

The majority, on the other hand, summarizes our holding in *Taylor* to be that "we possess jurisdiction to the extent that a taxpayer disagreed with the return as filed by respondent in a deficiency setting." In my view, the majority thus misstates our holding in *Taylor* by disregarding the principle that a substitute return is the equivalent of a return filed by the taxpayer, himself. We have consistently held in *Taylor,* and in *Goldberg,* and in a number of cases dealing with other issues, that in a deficiency proceeding, a taxpayer for whom respondent has filed a substitute return is in no different position than a taxpayer who himself filed the return at issue. *Second Carey Trust v. Commissioner,* 2 T.C. 629, 633 (1943); *Lee H. Marshall Heirs v. Commissioner,* 45 B.T.A. 632, 637 (1941); *Harden v. Commissioner,* 44 B.T.A. 961, 966 (1941), affd. 125 F.2d 906 (4th Cir. 1942); *Blenheim Co., Ltd. v. Commissioner,* 42 B.T.A. 1248, 1251 (1940); *Taylor Securities, Inc. v. Commissioner,* 40 B.T.A. 696 (1939); *Briarly v. Commissioner,* 29 B.T.A. 256 (1933).

If a substitute return is given the same status as a return filed by the taxpayer, as required by section 6020(b), then it is clear that the choice of filing status made on a substitute return should be treated no differently than the choice of filing status made on a return filed by the taxpayer. In both situations, the limitation contained in section

6013(b)(2)(C) applies and prohibits the taxpayer from electing joint return status in a proceeding before this Court brought pursuant to a notice of deficiency based upon the original return. For the foregoing reasons, I believe that *Goldberg* and the decisions of this Court which follow it, *Beran v. Commissioner*, T.C. Memo. 1980-119, and *Conovitz v. Commissioner*, T.C. Memo. 1980-22, and the opinion of the 10th Circuit in *Smalldridge v. Commissioner*, 804 F.2d 125 (10th Cir. 1986), affg. T.C. Memo. 1984-434, are correct and should be followed. See also *Fazz v. United States*, an unreported case (D. Ariz. 1985, 57 AFTR 2d 86-388, 85-2 USTC par. 9790).

PARKER, HAMBLEN, JACOBS, WILLIAMS, and WELLS, *JJ.*, agree with this dissent.