T.C. Memo. 2007-207

UNITED STATES TAX COURT

ROYCE A. ELLIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19766-05.            Filed July 31, 2007.

<u>Terrel B. DoRemus</u>, for petitioner.

<u>Audrey M. Morris</u> and <u>Michelle M. Kwon</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's Federal income taxes for 1999, 2000, and 2001 (years
at issue) of $1,517,634, $3,859,291, and $1,737,726, as well as
additions to tax under section 6651(a)(1) of $379,409, $868,340,
and $434,432, respectively, and additions to tax for 2000 under

section 6651(a)(2) of $964,823, and under section 6654(a) of $206,144.[1]

After concessions,[2] the issues for decision are: (1) Whether respondent violated petitioner's due process rights when he failed to provide petitioner or his representative a notice of bypass pursuant to section 601.506(b)(1), Statement of Procedural Rules, and a 30-day letter pursuant to section 601.105(d)(1), Statement of Procedural Rules; (2) whether respondent's use of the bank deposits method to reconstruct petitioner's income for the years at issue was arbitrary and unreasonable; (3) whether a Service Center's closing notice for 2001 was a closing agreement within the meaning of section 7121; (4) whether respondent's examination of petitioner's 2001 tax year violated section 7605(b); (5) whether petitioner substantiated Schedule C, Profit or Loss From Business, costs of goods sold or deductions for the

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

[2] Respondent concedes that petitioner's Schedule C, Profit or Loss From Business, gross receipts for 2000 were $9,009,882.

Respondent concedes petitioner properly reported his 2001 Schedule C gross receipts of $4,196,750.

Respondent concedes that because petitioner's extension for filing for 2001 was sought and granted, petitioner is liable for a 15-percent addition to tax under sec. 6651(a)(1) for 2001 instead of the 25-percent addition proposed in the notice of deficiency.

years at issue in amounts greater than allowed by respondent; and (6) whether petitioner is liable for additions to tax under section 6651(a)(1) for the years at issue and under sections 6651(a)(2) and 6654 for 2000.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Highlands Ranch, Colorado, when the amended petition was filed.

During the years at issue, petitioner operated a commercial construction business as a sole proprietorship under the name Coastal Builders. Petitioner provided framing, drywall, plaster finishing, and painting services. Most of petitioner's business came from subcontract work for JPI Apartment Management and/or JPI Apartment Construction, L.P. (JPI).

In 2001, JPI initiated an internal audit of petitioner and discovered that the Social Security number he provided to JPI actually belonged to his son. On January 31, 2002, JPI filed with the Internal Revenue Service (IRS) and mailed to petitioner corrected Forms 1099-MISC, Miscellaneous Income, for 1999 and 2000, and an accurate Form 1099-MISC for 2001 using petitioner's Social Security number. JPI reported it paid petitioner $3,130,417, $8,240,832, and $2,573,626, in the respective years at issue.

Respondent subsequently initiated an examination of petitioner's years at issue. On June 13, 2002, respondent received petitioner's Form 2848, Power of Attorney and Declaration of Representative, for 2000 listing John W. Townshend, an accountant, as the representative to whom petitioner delegated a power of attorney.[3]

On October 21, 2002, petitioner filed a Form 1040, U.S. Individual Income Tax Return, for 2001, including his Schedule C, which reported gross receipts of $4,196,750 and costs of goods sold and deductions totaling $4,238,057.[4]

In late 2002, respondent's Revenue Agent, Dennis Bok, attempted to reach Mr. Townshend by telephone on 12 occasions. With each attempt, Agent Bok left a message stating his name, telephone number, and a brief message. Agent Bok received no response from Mr. Townshend. On January 3, 2003, Agent Bok prepared a memorandum for his superiors requesting a bypass of power of attorney in which he stated that

> Mr. Townshend, in not communicating with me, is attempting to delay and hindered [sic] my ability to

---

[3] Petitioner offered Forms 2848 for 1999, 2000, and 2001 into evidence which were dated Sep. 20, 2002, Oct. 20, 2001, and Oct. 20, 2001, respectively. However, the record indicates respondent only received a Form 2848 for 2000. The record also indicates that petitioner hired Mr. Townshend after Jan. 31, 2002. Thus, from the record it appears the Forms 2848 for 2000 and 2001 were incorrectly dated.

[4] The latter amount comprised returns and allowances of $1,406, costs of goods sold of $3,765,466, and total expenses of $471,185.

complete the examination.  I am requesting that the power of attorney for Mr. John W. Townshend be bypassed, as his apparent non-cooperation and lack of communication is delaying and hindering the examination process.

On January 3, 2003, Agent Bok's request to bypass Mr. Townshend and to contact petitioner directly was granted.  Neither petitioner nor Mr. Townshend received notice of respondent's bypass.

On January 24, 2003, respondent issued to petitioner a notice of audit with Form 4564, Information Document Request, informing petitioner his 2001 tax year was under examination and requesting he provide books, records, and other documentation with respect to Coastal Builders.  At a March 24, 2003, meeting, between Mr. Townshend and Agent Bok, Mr. Townshend provided a 2001 general business ledger for Coastal Builders.  The ledger had been prepared for the audit because petitioner did not keep contemporaneous books and records of Coastal Builders' business income and expenses.  Although Agent Bok and Mr. Townshend discussed 1999 and 2000, no documentation was exchanged.

On June 23, 2003, during the audit, respondent's Service Center in Ogden, Utah (Ogden Service Center), mailed a CP-2501 letter to petitioner indicating that JPI filed four Forms 1099-MISC showing petitioner received $5,704,041 from JPI in 2001. The letter requested information explaining a discrepancy between

the income reported on the Forms 1099-MISC and the income reported on petitioner's 2001 return.

In response, on June 30, 2003, Mr. Townshend mailed a letter to the Ogden Service Center explaining the discrepancies,[5] which included a copy of petitioner's 2001 Schedule C, and a record of petitioner's 2001 bank deposits with respect to Coastal Builders. The letter also stated petitioner's bank statements for 2001 were in respondent's possession and provided Agent Bok's contact information.  On August 18, 2003, the Ogden Service Center mailed a CP-2005 Closing Notice for tax year 2001, which stated:

> Thank you for providing us with additional information about the issue we recently wrote you about.  We are pleased to tell you that, with your help, we were able to clear up the differences between your records and your payers' records. * * * .

> If you have already received a notice of deficiency, you may disregard it.  You won't need to file a petition with the United States Tax Court to reconsider the tax you owe.  If you have already filed a petition, the Office of the District Counsel will contact you on the final closing of this case.

Although the investigation was closed by the Ogden Service Center, the overall examination of the years at issue continued, and Revenue Agent Byron W. Daniels replaced Agent Bok as the Agent performing the examination.  Using the bank deposits method to reconstruct the income petitioner earned from doing business

---

[5] Mr. Townshend explained to the Ogden Service Center that two of the Forms 1099-MISC were inaccurate and the other two were respondent's replacements containing petitioner's corrected earnings information for 2001.

as Coastal Builders, Agent Daniels found that petitioner deposited income of $3,651,293, $9,409,882, and $4,316,813 into various bank accounts in the respective years at issue. Respondent did not issue to petitioner or Mr. Townshend a 30-day letter setting out Agent Daniels's findings.

On September 15, 2004, petitioner filed a Form 1040 for 1999 reporting a tax liability of $11,155. The 1999 return included petitioner's Schedule C for 1999 reporting gross receipts of $3,601,882 and costs of goods sold and expenses totaling $3,600,556.[6] Based upon respondent's bank deposits analysis, respondent determined that petitioner understated his Schedule C gross receipts in 1999 by $49,411.[7] Petitioner did not assert in his petition or offer evidence to show he did not understate his income in 1999.

Petitioner failed to file a return for 2000. Consequently, on June 15, 2005, respondent filed a substitute for return pursuant to section 6020(b), in which he determined petitioner received gross receipts of $9,409,882 in 2000. On brief, respondent conceded petitioner only received gross receipts of $9,009,882 for 2000. Petitioner failed to make estimated tax

---

[6] The $3,600,556 comprised costs of goods sold of $2,932,248, and deductions of $668,308.

[7] $3,651,293 (bank deposits) - $3,601,882 (reported Schedule C gross receipts) = $49,411 understatement

payments for 2000 and offered no evidence at trial to indicate any part of the $9,009,882 was nontaxable income.

Respondent conceded that petitioner properly reported his Schedule C gross receipts of $4,196,750 in 2001. However, respondent allowed petitioner only $57,931 of the $4,238,057 he reported as Schedule C costs of goods sold and deductions in 2001. Using the ratio of the allowed amount to income for 2001 (1.38 percent),[8] respondent computed allowable business deductions for petitioner's 1999 and 2000 (as conceded) tax years of $50,388 and $124,336, respectively.[9]

The notice of deficiency was issued on July 29, 2005. Petitioner timely filed his petition on October 25, 2005.

OPINION

A. Procedural Rules

Petitioner contends his due process rights were violated when respondent failed to provide him or his representative a notice of bypass for the years at issue pursuant to section 601.506(b)(1), Statement of Procedural Rules, and a 30-day letter stating the examiner's determinations pursuant to section 601.105(d)(1), Statement of Procedural Rules. As a result,

---

[8] $57,931 (2001 allowable Schedule C items)/$4,196,750 (2001 Schedule C gross business receipts) = 0.0138 = 1.38 percent.

[9] $3,651,293 (1999 Schedule C gross business receipts) x 0.0138 = $50,388; and $9,009,882 (2000 Schedule C gross business receipts) x 0.0138 = $124,336.

petitioner asserts the notice of deficiency is invalid, and if not, the burden of proof should shift to respondent.

If a taxpayer has a recognized representative, generally, the Commissioner contacts the taxpayer through his or her recognized representative. Sec. 601.506(a)(1), Statement of Procedural Rules. An IRS employee conducting an examination may request permission to bypass the taxpayer's recognized representative and contact the taxpayer directly if the recognized representative unreasonably delays or hinders an examination after repeated requests for nonprivileged information necessary to the examination. Sec. 601.506(b), Statement of Procedural Rules. If permission is granted, written notice of such permission, briefly stating the reason why it was granted, will be given to both the recognized representative and the taxpayer. Sec. 601.506(b)(1), Statement of Procedural Rules.

Additionally, in a case where an IRS examiner and the taxpayer fail to agree upon the examiner's determination to assert a deficiency or an additional tax, an IRS district director will send to the taxpayer a "30-day letter". Sec. 601.105(d)(1), Statement of Procedural Rules. The 30-day letter is a form letter which states and explains the basis of the examiner's proposed determination and informs the taxpayer of his or her appeal rights if the taxpayer disagrees with the proposed determination. Id.

The rules contained in the Statement of Procedural Rules, 26 C.F.R. part 601, et seq. (2001), are administrative directives and generally do not have the force and effect of law or create procedural protections for taxpayers. Vallone v. Commissioner, 88 T.C. 794, 807-808 (1987); Pleasanton Gravel Co. v. Commissioner, 64 T.C. 510, 529 (1975), affd. 528 F.2d 827 (9th Cir. 1978); Cataldo v. Commissioner, 60 T.C. 522, 523 (1973), affd. per curiam 499 F.2d 550 (2d Cir. 1974); Flynn v. Commissioner, 40 T.C. 770, 773-774 (1963); Ryan v. Commissioner, T.C. Memo. 1991-49; Abeson v. Commissioner, T.C. Memo. 1990-190 (procedural rules relating to powers of attorney are directory and have no legal effect), affd. without published opinion sub nom. Rivera v. Commissioner, 959 F.2d 241 (9th Cir. 1992). The Commissioner's failure to follow the procedural rules does not invalidate a notice of deficiency or shift the burden of proof. See Cataldo v. Commissioner, supra at 523 (the procedural rules do not curtail the power conferred upon the Secretary of the Treasury or his delegate by section 6212 to issue a notice of deficiency if he determines that there is a deficiency in the tax shown on the taxpayer's return); Finley v. Commissioner, T.C. Memo. 1982-411, affd. without published opinion 720 F.2d 1289 (5th Cir. 1983).

Because sections 601.506(b)(1) and 601.105(d)(1), Statement of Procedural Rules, do not create procedural protections, the

Court finds that petitioner's procedural due process rights were not violated when respondent failed to provide him and Mr. Townshend a notice of by-pass or a 30-day letter. Rosenberg v. Commissioner, 450 F.2d 529, 532-533 (10th Cir. 1971), affg. T.C. Memo. 1970-201. For the foregoing reasons, the Court finds the notice of deficiency is valid, and the burden of proof does not shift to respondent.

B.    The Bank Deposits Method of Income Reconstruction

Petitioner contends that respondent's use of the bank deposits method to reconstruct his taxable income for 2000 was arbitrary and unreasonable.

When a taxpayer fails to maintain or produce adequate books and records, the Commissioner is authorized under section 446 to compute the taxpayer's taxable income by any method which clearly reflects income. Holland v. United States, 348 U.S. 121, 130-132 (1954); Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965); Sutherland v. Commissioner, 32 T.C. 862, 866-867 (1959). The Commissioner has great latitude in selecting a method for reconstructing a taxpayer's income, and the method need only be reasonable in the light of all the surrounding circumstances.

This Court has long accepted the bank deposits method of income reconstruction. Nicholas v. Commissioner, 70 T.C. 1057, 1064-1065 (1978); Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977). While not

conclusive, bank deposits are prima facie evidence of income. Boyett v. Commissioner, 204 F.2d 205 (5th Cir. 1953), affg. a Memorandum Opinion of this Court; Hague Estate v. Commissioner, 132 F.2d 775 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, supra at 656-657. Taxpayers generally bear the burden of proving the Commissioner's determinations are erroneous and, in the case of a bank deposits analysis, must show the deposits came from a nontaxable source. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Harper v. Commissioner, 54 T.C. 1121, 1129 (1970).

In the years at issue, petitioner did not maintain contemporaneous books and records for Capital Builders. The foundation for the deficiencies was derived from JPI's Forms 1099-MISC for petitioner's years at issue and respondent's bank deposit analysis for the same periods. Other than certain deposits conceded by respondent to be nontaxable, petitioner failed to produce evidence to show that any other bank deposit in 1999 or 2000 was nontaxable income. See Harper v. Commissioner, supra at 1129. The Court finds respondent's use of the bank deposits method to reconstruct petitioner's taxable income was neither arbitrary nor unreasonable. See Estate of Mason v. Commissioner, supra at 656-657. Therefore, the Court sustains

respondent's determinations of petitioner's gross receipts (as reduced by concessions).

C.    Whether Respondent's Examination of Petitioner's 2001 Tax Year Was Invalid.

   1.    2001 Closing Agreement

Petitioner contends that the August 18, 2004, closing notice issued by respondent's Ogden Service Center was a closing agreement within the meaning of section 7121.  Consequently, because there was no showing of fraud or misrepresentation, petitioner asserts Agent Daniels's examination of his 2001 return was invalid.

The Commissioner is authorized to enter into a closing agreement with any person regarding his or her liability for any taxable period.  Sec. 7121(a).  Section 7121 sets forth the exclusive means by which a closing agreement between the Commissioner and a taxpayer may be accorded finality.  Urbano v. Commissioner, 122 T.C. 384, 393-394 (2004).  Closing agreements are final, conclusive, and binding on the parties as to matters agreed upon and may not be annulled, modified, set aside, or disregarded in any suit or proceeding unless there is a showing of fraud, malfeasance, or misrepresentation of a material fact.  Sec. 7121(b); Urbano v. Commissioner, supra.  All closing agreements must be executed on forms prescribed by the Internal Revenue Service.  Urbano v. Commissioner, supra; sec. 301.7121-1(d), Proced. & Admin. Regs.

The Commissioner has prescribed two types of closing agreements: (1) Form 866, Agreement as to Final Determination of Tax Liability, is used to determine conclusively a taxpayer's total tax liability for a taxable period; and (2) Form 906, Closing Agreement, is used if the closing agreement relates to one or more separate items affecting the tax liability of a taxpayer. Urbano v. Commissioner, supra; Zaentz v. Commissioner, 90 T.C. 753, 760-761 (1988); Rev. Proc. 68-16, 1968-1 C.B. 770.

The parties did not execute either a Form 866 or a Form 906. The closing notice issued by respondent's Ogden Service Center did not constitute a closing agreement pursuant to section 7121. Rather, it merely closed the Ogden Service Center's inquiry into the discrepancies between the gross receipts reported on petitioner's 2001 tax return and the Forms 1099 respondent received from JPI. Although petitioner credibly contends that he believed that 2001 was closed from further examination when he received the closing notice, such a unilateral belief on his part does not satisfy the requirements of section 7121. See Urbano v. Commissioner, supra. Therefore, the Court finds that petitioner's 2001 tax year remained open for examination after he received respondent's Ogden Service Center's closing notice.

2. Section 7605(b)

Petitioner contends that respondent's Ogden Service Center's request for information and subsequent findings constituted an

examination within the meaning of section 7605, and, as a result, the subsequent examination performed by Agent Daniels was in violation of section 7605(b).

> SEC. 7605(b). Restrictions on Examination of Taxpayer.--No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

The Court finds that respondent's Ogden Service Center's request to verify the discrepancy between petitioner's 2001 return and Forms 1099 was not an examination or inspection of petitioner's books of account. See sec. 7605(b); Benjamin v. Commissioner, 66 T.C. 1084, 1098 (1976), affd. on other grounds 592 F.2d 1259 (5th Cir. 1979); Miller v. Commissioner, T.C. Memo. 2001-55. Therefore, Agent Daniels's examination of petitioner's 2001 tax year did not violate section 7605(b).

D.   Substantiation of Deductions

Respondent contends that petitioner did not substantiate the reported Schedule C costs of goods sold or deductions for 1999 and 2001 and failed to claim or substantiate any Schedule C costs of goods sold or deductions for 2000 in an amount greater than allowed by respondent.

The taxpayer is required to maintain records sufficient to enable the Commissioner to determine his correct tax liability. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Petitioner did not keep contemporaneous books and records of his costs of goods sold or business deductions for the years at issue and did not testify at the trial. At trial, petitioner offered no evidence to substantiate the reported 1999 Schedule C costs of goods sold or deductions and did not claim or substantiate that petitioner had any Schedule C costs of goods sold or deductions for 2000.

To substantiate petitioner's 2001 Schedule C costs of goods sold and deductions, petitioner merely produced the 2001 business ledger prepared for the audit with Agent Bok without any supporting documentation, except for 18 Forms 1099-MISC reporting compensation paid to contract employees who performed services for petitioner in 2001. However, 8 of the 18 Forms 1099-MISC did not contain the Social Security numbers of the contract employees reported as receiving compensation, two sets of the Forms 1099-MISC contained the same Social Security number for different names, and 7 of the Forms 1099-MISC did not contain addresses. The 18 Forms 1099-MISC were not filed with the IRS, and the contract employees indicated on the Forms 1099-MISC as receiving compensation were not listed as taxpayers in respondent's database.

The Court was not provided with any information about petitioner's business operation or how expenses were incurred. As a result, the Court did not have a reasonable basis upon which

an approximation of an allowed amount of deductions could be made under <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930). See <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 743 (1985).

For the foregoing reasons, the Court finds petitioner failed to prove he was entitled to Schedule C costs of goods sold and deductions in an amount greater than allowed by respondent for the years at issue.

E.    <u>Additions to Tax</u>

Respondent determined additions to tax pursuant to:  (1) Section 6651(a)(1), for petitioner's failure to file tax returns for the years at issue; (2) section 6651(a)(2), for petitioner's failure to timely pay tax for 2000;[10] and (3) section 6654, for petitioner's failure to pay estimated income tax for 2000. Respondent bears the burden of production with respect to petitioner's liability for the additions to tax.  Sec. 7491(c); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001).

Respondent established that petitioner failed to file timely Federal income tax returns for the years at issue.  Respondent also produced a substitute for return pursuant to section 6020(b) establishing petitioner failed to pay timely Federal income tax for 2000.  See <u>Millsap v. Commissioner</u>, 91 T.C. 926, 930-931 (1988).  Respondent's section 6020(b) substitute for return for

---

[10] Respondent did not seek sec. 6651(a)(2) additions to tax for 1999 and 2001.

2000 contained petitioner's name, address, Social Security number, filing status, and information regarding income and tax, to which was attached Form 886-A, Explanation Of Items, containing sufficient information from which to compute petitioner's tax liability.

Petitioner did not show reasonable cause for the failure to file timely returns for the years at issue or timely pay tax in 2000. Sec. 6651(a)(1) and (2). Accordingly, the Court finds petitioner is liable for section 6651(a)(1) and (2) additions to tax to be calculated under Rule 155.[11]

Under section 6654, the addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability. Each required installment of estimated tax is equal to 25 percent of the "required annual payment". Sec. 6654(d)(1)(A). The "required annual payment" is generally equal to the lesser of (1) 90 percent of the tax shown on the individual's return for that year (or, if no return is filed, 90 percent of his or her tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100 percent of the tax shown on that return. Sec. 6654(d)(1)(B); Wheeler v. Commissioner, 127 T.C. 200, 210-211 (2006); Heers v. Commissioner, T.C. Memo. 2007-10.

---

[11] In the Rule 155 calculations the parties must take into consideration sec. 6651(c)(1).

Respondent introduced evidence to prove petitioner was required to file a Federal income tax return for 2000, did not file a Federal income tax return for 2000, and failed to make any estimated tax payments for 2000. However, in order to permit this Court to make the analysis required by section 6654(d)(1)(B)(ii) and to conclude respondent met his burden of producing evidence that petitioner had a required annual payment for 2000 payable in installments under section 6654, respondent also must introduce evidence showing whether petitioner filed a return for the preceding taxable year, and, if so, the amount of tax shown on that return. See Wheeler v. Commissioner, supra at 212. The parties stipulated petitioner's 1999 Federal income tax return, which reported a tax liability of $11,155. See Mendes v. Commissioner, 121 T.C. 308, 324 (2003). Even though petitioner's return was untimely filed on September 15, 2004, and was filed during respondent's examination of his 1999 tax year, it was filed before the notice of deficiency was issued. Therefore, the Court finds that $11,155 is the amount to compute the required annual payment under section 6654(d)(1)(B)(ii). See Mendes v. Commissioner, supra at 324-325.

The Court concludes respondent met his burden of production. Petitioner did not dispute that he failed to make estimated tax payments for 2000 or assert that he fell within any statutory exception under section 6654. See sec. 6654(e). Consequently,

the Court finds petitioner is liable for a section 6654 addition to tax for 2000.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.